Alma Brown, Petitioner-Appellant,

v.

State of Wisconsin Dep't of Children and Families
and Wisconsin Dep't of Administration,
Division of Hearings and Appeals,
Respondents-Respondents.

Court of Appeals

*No. 2011AP1350. Submitted on briefs February 28, 2012.
—Decided April 24, 2012.*

2012 WI App 61

(Also reported in 819 N.W.2d 827.)

450

452

453

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Legal Action of Wisconsin, Inc.*, and *Jill M. Kastner*, of Milwaukee.

On behalf of the respondents-respondents, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *Mary E. Burke*, assistant attorney general.

Before Curley, P.J., Fine and Brennan, JJ.

¶ 1. CURLEY, P.J. Alma Brown appeals the trial court's order affirming the decision of the Department of Children and Families ("the Department") to permanently revoke her childcare license pursuant to Wisconsin's new caregiver law, 2009 Wis. Act 76. She presents on appeal several reasons why we ought to reverse the order and the Department's decision. First, Brown argues that the Department's decision was predicated on an erroneous finding of fact—namely, that she was convicted under Wis. Stat. §§ 49.12(1), (6) and 943.20(3)(c) (1987–88 & 1989–90) instead of, as she argues, only § 49.12(6).[1] Second, Brown argues that the Department erred as a matter of law in concluding that

---

[1] Brown's criminal complaint that is the subject of this case was dated November 29, 1990, when the 1987–88 version of the Wisconsin Statutes was in effect. Brown's judgment of conviction was signed May 16, 1991, after the 1989–90 version of the

457

she should be permanently barred from holding a childcare license under the new caregiver law. Third, Brown argues that the new caregiver law, both on its face and as applied to her, is unconstitutional. For the reasons stated below, we affirm.

## BACKGROUND

¶ 2. This case is about a state daycare licensee who lost her license pursuant to Wisconsin's new caregiver law, 2009 Wis. Act 76. *See Jamerson v. Wisconsin Dep't of Children & Families*, 2012 WI App 32, ¶¶ 12–17, 340 Wis. 2d 215, 813 N.W.2d 221 (describing new caregiver law, 2009 Wis. Act. 76, and examining differences between new law and old caregiver law).

¶ 3. Brown received her childcare license some time around 2001. Prior to that—specifically, throughout the 1980s—she received public assistance, including food stamps. As pertinent to this case, between 1986 and 1990, Brown completed several applications that asked whether she was employed or had other means of income. In each application, Brown stated that she was not employed.

¶ 4. Unfortunately, Brown's reporting did not accurately depict her employment status, as she did in fact work at Marshall Field's on a temporary basis during the 1986–1989 Christmas seasons. During those years, Brown's employment at Marshall Field's extended through the Christmas season only, and ended soon thereafter. Thus, when she filled out her Department of Social Services forms—in March 1987, March

Statutes had taken effect. The language of the 1987–88 and 1989–90 versions of Wis. Stat. §§ 49.12(1), (6) and 943.20(3)(c) is identical. Therefore, all references to the Wisconsin Statutes are to the 1987–88 and 1989–90 versions unless otherwise specified.

458

1988, September 1988, April 1989 and October 1989—she reported that she had no employment and no income even though she was in fact employed during Christmastime.

¶ 5. Consequently, in May 1991, Brown was convicted, pursuant to a guilty plea, of failure to report income, contrary to Wis. Stat. §§ 49.12(1), (6) and 943.20(3)(c).

¶ 6. Nearly two decades later, on February 2, 2010, the Department issued a Notice of Revocation to Brown informing her that her childcare license had been revoked because she had been convicted of a crime that barred her from holding a license under the new childcare law, which had taken effect on February 1, 2010.

¶ 7. On February 10, 2010, Brown filed an appeal with the Division of Hearings and Appeals ("the Division"). The Division affirmed the Department's decision, determining, among other things, that "the factual circumstances surrounding [Brown]'s conviction are irrelevant" because her conviction barred her from holding a license pursuant to the new childcare law as a matter of law. According to the Division, "[t]he statute mandates that [the Department] may not license or continue the license of a person to operate a daycare center if that person has been convicted of a serious crime or has committed an offense involving fraudulent activity as a recipient of public assistance."

¶ 8. Brown then appealed to the trial court, which affirmed the Department's decision to revoke her license. She now appeals to this court.

## ANALYSIS

¶ 9. Brown makes several arguments on appeal. First, she argues that the Department's decision was

predicated on an erroneous finding of fact—namely, that she was convicted under Wɪs. Sᴛᴀᴛ. §§ 49.12(1), (6) and 943.20(3)(c), instead of, as she argues, only § 49.12(6). Second, Brown argues that the Department erred as a matter of law in concluding that she should be permanently barred from holding a childcare license under the new caregiver law. Third, Brown argues that the new caregiver law, both on its face and as applied to her, is unconstitutional. We address each argument in turn.

> *1) The Department's finding that Brown "was convicted of a felony, Failure to Report Receipt of Income" contrary to Wɪs. Sᴛᴀᴛ. §§ 49.12(1), (6) and 943.20(3)(c), is supported by credible and substantial evidence.*

¶ 10. We turn first to Brown's argument that the Department's decision must be reversed because it was predicated on an erroneous finding of fact—namely, that she was convicted under Wɪs. Sᴛᴀᴛ. §§ 49.12(1), (6) and 943.20(3)(c) instead of, as she argues, only § 49.12(6).

¶ 11. As a general matter, we will uphold an agency's "findings of fact if they are supported by 'credible and substantial evidence.' " *See Hagen v. LIRC*, 210 Wis. 2d 12, 23, 563 N.W.2d 454 (1997) (citation omitted). To determine whether there is substantial evidence, we determine, after considering all the evidence of record, whether reasonable minds could arrive at the same conclusion as the agency. *See Milwaukee Symphony Orchestra, Inc. v. Wisconsin Dep't of Revenue*, 2010 WI 33, ¶ 31, 324 Wis. 2d 68, 781 N.W.2d 674. As a general matter, we may set aside an agency's findings of fact "only when a reasonable trier of fact could not have reached them from all the evidence before it, including the available inferences from that evidence." *See id.*

While findings of an administrative agency are ordinarily entitled to deference on review, where the factual finding is based entirely on uncontroverted evidence and the credibility of witnesses is not at issue, this court is in as good a position as the agency to make findings of fact. *See Boynton Cab Co. v. DILHR*, 96 Wis. 2d 396, 407, 291 N.W.2d 850 (1980).

¶ 12. Brown urges us to review the Department's findings of fact using the standard described in *Boynton Cab Co.*, arguing that they were based on her criminal complaint and judgment of conviction—both of which are undisputed—and because witness credibility is not at issue. *See id.* However, we decline to do so because Brown in fact challenges the identification of her conviction—arguing that she was convicted solely under Wis. Stat. § 49.12(6) and not Wis. Stat. §§ 49.12(1) or 943.20(3)(c), which she claims are mere penalty provisions.

¶ 13. Therefore, in evaluating Brown's argument regarding the Department's findings of fact—an issue we now turn to—we will uphold the Department's findings so long as they are supported by credible and substantial evidence. *See Hagen*, 210 Wis. 2d at 23.

■

¶ 14. Brown states in her brief that "the totality of the record" "clearly establishes that [she] was convicted of failing to report receipt of income under Wis. Stat. § 49.12(6), with the penalties of subsection (1) and [Wis. Stat. §] 943.20(3)(c) to apply." According to Brown, this means that the Department erred by finding that she was actually "convicted" of violating Wis. Stat. § 943.20(3)(c) and § 49.12(1). This is because, argues Brown, §§ 49.12(1) and 943.20(3)(c) are technically penalty statutes, and a person cannot violate a penalty statute.

461

¶ 15. Brown mischaracterizes her conviction and the Department's finding. She is correct in arguing that she was convicted of only one offense; indeed, the judgment of conviction states and the Department found that she "was convicted of a felony, Failure to Report Receipt of Income." Additionally, the Department's final decision expressly corrected any references in the proposed decision to "convictions" to "accurately reflect that petitioner was convicted of one felony count." However, as the Department and the Division correctly point out, the one offense under which Brown was convicted is fully described by two statutes, with the third imposing the penalty based on the crime's severity.

¶ 16. The judgment of conviction lists one crime, "Failure to Report Receipt of Income," and states that the statutes violated were "[WIS. STAT. §§] 49.12(6)[,] (1) and 943.20(3)(c)." Section 49.12 is titled "Penalties; evidence," and the sections under which Brown was convicted in 1991 provide, in pertinent part:

> (1) [a]ny person who, with intent to secure public assistance under this chapter . . . willfully makes any false representations may . . . be punished as prescribed under [WIS. STAT. § ] 943.20(3)(c).
>
> . . . .
>
> (6) [w]here a person is originally eligible for assistance and receives any income or assets or both thereafter and fails to notify the officer or agency granting such assistance of the receipt of such assets within 10 days after such receipt and continues to receive aid, such failure to so notify the proper officer or agency . . . shall be considered a fraud.

Section 943.20(3)(c) provides: "If the value of the property exceeds $2,500, [the offender] is guilty of a Class C felony."

¶ 17. Consequently, while it is true that WIS. STAT. §§ 49.12(1) and 943.20(3)(c) reference penalties, it is not accurate to characterize § 49.12(1) as a mere penalty provision. This section expressly incorporates an intent element to the crime by describing the prohibited conduct as being undertaken "willfully" and "with intent." *See id.*

¶ 18. Furthermore, the facts of the complaint— which formed the basis for Brown's conviction— demonstrate that she: willfully made false representations in securing food stamps and general public assistance, contrary to WIS. STAT. § 49.12(1); received income but failed to report it, and thereafter continued to receive food stamps and general public assistance, contrary to WIS. STAT. § 49.12(6); and the amount received was, contrary to § 49.12(1) and subject to the penalties in WIS. STAT. § 943.20(3)(c), in excess of $2500. Specifically, the complaint alleged that Brown:

> [O]n and between December 1, 1986 and February 1, 1990, . . . being a person originally eligible to receive public assistance from the Milwaukee County Department of Social Services, did receive income thereafter, and did intentionally fail to notify said agency . . . of the receipt of that income within 10 days after receipt, and thereafter continued to receive public assistance, resulting in a fraudulent overgrant of $2514 between January 1, 1987 and February 1, 1990, contrary to Wisconsin Statutes section(s) 49.12(6) & (1) and []943.20(3)(c).

Therefore, it is simply not true that "Brown was never convicted of violating the elements of WIS. STAT. [§ ]49.12(1)" or that "[n]o evidence was presented that Ms. Brown was even charged with a violation under WIS. STAT. § 49.12(1)." While Brown contends that the aforementioned portions of the complaint constitute mere legal conclusions that cannot be construed as evidence, she overlooks the fact that the remainder of the com-

463

plaint gives ample facts from which a factfinder could infer that Brown did in fact make intentional representations and/or omissions. *Cf. State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990) ("It is well established that a finding of guilt may rest upon evidence that is entirely circumstantial and that circumstantial evidence is oftentimes stronger and more satisfactory than direct evidence.").

¶ 19. Additionally, Brown acknowledged the interplay among the three statutes in her administrative proceeding. For example, Brown's counsel informed the administrative law judge overseeing the case that "Ms. Brown will not object to the authenticity of the criminal complaint and conviction" and that "[t]he fact of Ms. Brown's conviction under ch. 49 is not disputed." Similarly, Brown's administrative appeal brief acknowledged that she "was convicted of 'Failure to Report Receipt of Income' pursuant to [Wis. Stat. §§] 49.12(6)(1) and 943.20(3)(c) based on the facts stated in the criminal complaint."

¶ 20. Therefore, we disagree with Brown that the Department made an "erroneous finding of fact as to three statutory violations," and we disagree that the only statute Brown "violated" was Wis. Stat. § 49.12(6). The agency's finding of fact—that Brown "was convicted of a felony, Failure to Report Receipt of Income" contrary to § 49.12(1), (6) and Wis. Stat. § 943.20(3)(c)—will stand.

> *2) The Department's conclusion that Brown is permanently barred from holding a childcare license under the new caregiver law is not contrary to the clear meaning of the statute.*

¶ 21. We next turn to Brown's argument that the Department erred as a matter of law in concluding that

464

she should be permanently barred from holding a childcare license under the new caregiver law. We review the Department's legal conclusions, not those of the trial court. *See Emmpak Foods, Inc. v. LIRC*, 2007 WI App 164, ¶ 3, 303 Wis. 2d 771, 737 N.W.2d 60.

¶ 22. "We generally apply three levels of deference to conclusions of law and statutory interpretation in agency decisions." *Kitten v. DWD*, 2001 WI App 218, ¶ 22, 247 Wis. 2d 661, 634 N.W.2d 583. "These three levels take into account the comparative institutional qualifications and capabilities of the court and the administrative agency." *MercyCare Ins. Co. v. Wisconsin Comm'r of Ins.*, 2010 WI 87, ¶ 28, 328 Wis. 2d 110, 786 N.W.2d 785. The first level of deference, "great weight" deference, applies when: (1) the legislature charged the agency with the duty of administering the statute; (2) the agency's statutory interpretation is one of long-standing; (3) "the agency employed its specialized knowledge or expertise in forming the interpretation;" and (4) "the agency's interpretation will provide consistency and uniformity in the application of the statute." *Tannler v. DHSS*, 211 Wis. 2d 179, 184, 564 N.W.2d 735 (1997). The second level of deference, "due weight," applies "when the agency has some experience in an area but has not developed the expertise that places it in a better position than the court to make judgments regarding the interpretation of the statute." *MercyCare*, 328 Wis. 2d 110, ¶ 30. When due weight deference applies, we sustain an agency's interpretation "if it is not contrary to the clear meaning of the statute" or unless we determine "that a more reasonable interpretation exists." *See id.* The third and lowest level of deference, *de novo* review, applies "where it is clear from the lack of agency precedent that the case is one of first

impression for the agency and the agency lacks special expertise or experience in determining the question presented." *Kitten*, 247 Wis. 2d 661, ¶ 22.

██

¶ 23. We conclude that due weight deference applies in Brown's case. The controlling statute at issue is WIS. STAT. § 48.685(5)(br)5. (2009–10). We recognize that the legislature has charged the Department with administering the statute in question and that applying its interpretation will provide uniformity and consistency in the law's application. However, this statute is relatively new; therefore, while the agency no doubt has had some experience interpreting the new caregiver law, the agency's interpretation cannot possibly be so longstanding as to warrant great weight deference. On the other hand, we note that even though the statute at issue is relatively new, the agency's interpretation of the statute is no longer one of first impression, *see Jamerson*, 2012 WI App 32, ¶ 11 (applying *de novo* review to agency's interpretation of WIS. STAT. § 48.685(5)(br)5. (2009–10) because issue was one of first impression), and we can no longer say that the agency lacks experience in determining the question presented, *see Jamerson*, 2012 WI App 32, ¶ 11; *see also Kitten*, 247 Wis. 2d 661, ¶ 22. We will therefore not review the agency's decision *de novo*. In sum, because the agency does have some experience in interpreting the statute at issue, but has not developed an expertise that places it in a better position than this court to make judgments regarding its interpretation, *see MercyCare*, 328 Wis. 2d 110, ¶ 30, we will give the agency's legal conclusions due weight deference.

¶ 24. As noted, the Department concluded that Brown's conviction under WIS. STAT. §§ 49.12(1), (6) and 943.20(3)(c) automatically barred her from holding a

license under the new childcare law. According to the Department, the law does not leave any room for discretion and no administrative rules or policy have been enacted granting discretion on the matter.

¶ 25. Brown argues that the Department is wrong because her conviction did not involve fraudulent activity. She contends that she did not purposefully fail to report her seasonal income. Brown also argues that the statute's legislative history does not define the term "fraudulent activity," and as a result, we should conclude that the new law does not automatically bar all individuals convicted of public assistance violations.

¶ 26. We begin our analysis by turning to WIS. STAT. § 48.685(5)(br)5. (2009–10), which, pursuant to 2009 Wis. Act 76, permanently bars individuals convicted of "fraudulent activity" involving food stamps from holding childcare licenses. Section 48.685(5) provides, in pertinent part:

> (br) For purposes of licensing a person to operate a day [child] care center . . . no person who has been convicted or adjudicated delinquent on or after his or her 12th birthday for committing any of the following offenses . . . may be permitted to demonstrate that he or she has been rehabilitated [regarding]:
>
> . . . .
>
> 5. [a]n offense involving fraudulent activity as a participant in the Wisconsin Works program under ss. 49.141 to 49.161, including as a recipient of . . . food stamps benefits under the food stamp program under 7 USC 2011 to 2036 . . . .

▆▆▆

¶ 27. Contrary to what Brown argues, her conviction under WIS. STAT. § 49.12(1) and (6) involves "fraudulent activity." As we explained in *Jamerson*,

fraud is a two-prong offense "involving: (1) the making of a 'false or misleading statement,' with (2) the intent to use, present, transfer, acquire, receive, or possess program benefits." *See id.*, 2012 WI App 32, ¶ 20 (citing 7 USC § 2015(b)); *see also* BLACK'S LAW DICTIONARY 685 (8th ed. 2004) (defining "fraud" as "[a] knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment"); *Derbeck v. Albright*, 186 Wis. 515, 203 N.W. 337, 339 (1925) (Crownhart, J., dissenting) (defining fraud as " '[a] generic term" that "embraces all the multifarious means which human ingenuity can devise, and are resorted to by one individual to get an advantage over another by false suggestions, or by the suppression of the truth.' ") (citation omitted). And, as we explained in part 1 above, both elements—making a false or misleading statement and the intent to receive benefits—were alleged in the complaint. Also, as we explained in part 1 above, Brown misconstrues the statutes by attempting to separate violations under § 49.12(1) and (6) when the two subsections are meant to be read together. Furthermore, despite Brown's statements made in a recently-created affidavit to the contrary, she did plead guilty to an offense involving fraud.

¶ 28. Therefore, because Brown was convicted of an offense involving fraudulent activity as a food stamp recipient, we conclude that the Department's decision to revoke Brown's childcare license was reasonable.[2]

---

[2] That is not to say, however, that we agree with the Department that the factual basis for her conviction under WIS. STAT. §§ 49.12(1), (6) and 943.20(3)(c) was "irrelevant." *See Jamerson v. Wisconsin Dep't of Children & Families*, 2012 WI App 32, ¶¶ 21–25, 340 Wis. 2d 215, 813 N.W.2d 221 (licensee's conviction under §§ 49.12(1) & (6) insufficient to bar licensure

### 3) The New Caregiver Law is Constitutional.

¶ 29. Brown next argues that the new caregiver law violates her constitutional rights to due process of law and equal protection under the law. "Wisconsin statutes are presumed constitutional." *Peppies Courtesy Cab Co. v. City of Kenosha,* 165 Wis. 2d 397, 400, 475 N.W.2d 156 (1991). Brown can overcome this presumption only by proving that the statute is unconstitutional beyond a reasonable doubt. *See id.* Thus, in turning to her arguments, we analyze whether she can prove that a law " 'clearly contravenes some constitutional provision,' " not whether we "agree[] with the wisdom or merits of the law." *See id.* at 400–01 (citation omitted). The constitutionality of a statute is a question of law we review *de novo. State v. Jorgensen,* 2003 WI 105, ¶ 14, 264 Wis. 2d 157, 667 N.W.2d 318.

### a) The new caregiver law does not violate Brown's right to due process because it affords her adequate post-license revocation remedies.

¶ 30. Brown argues that the new caregiver law violates her constitutional right to procedural due process. Specifically, she claims that she has a liberty interest in employment opportunities in her chosen field of childcare and a property interest in her state-issued childcare license, and that she was deprived of those rights when the Department revoked her childcare license without first granting her a hearing. Brown further argues that the substance of the Department's revocation letter was inadequate.

---

under new childcare law because offense did not clearly involve "food stamps" or other welfare program enumerated by statute).

¶ 31. "[P]rocedural due process rights emanate from the Fourteenth Amendment," which "protects individuals from governmental 'denial of fundamental procedural fairness.'" *Thorp v. Town of Lebanon*, 2000 WI 60, ¶ 53, 235 Wis. 2d 610, 612 N.W.2d 59 (citation omitted). A plaintiff alleging a procedural due process violation "must show a deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' without due process of law." *Id.* (citation and three sets of quotation marks omitted). "[D]eprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." *Casteel v. McCaughtry*, 176 Wis. 2d 571, 579, 500 N.W.2d 277 (1993) (citation and one set of quotation marks omitted). Thus, to establish a procedural due process violation, Brown must show: (1) that she had a protected interest; and (2) that she was deprived of that interest without due process of law. *See Dane Cnty. v. McCartney*, 166 Wis. 2d 956, 967, 480 N.W.2d 830 (Ct. App. 1992).

¶ 32. "The requirement of procedural due process is met if a state provides adequate post-deprivation remedies." *Thorp*, 235 Wis. 2d 610, ¶ 53. "A state post-deprivation remedy is considered adequate unless it can 'readily be characterized as inadequate to the point that it is meaningless or nonexistent and thus, in no way can be said to provide the due process relief guaranteed under the fourteenth amendment.'" *See Scott v. McCaughtry*, 810 F. Supp. 1015, 1019 (E.D. Wis. 1992) (citation omitted); *see also New Burnham Prairie Homes, Inc. v. Village of Burnham*, 910 F.2d 1474, 1480

(7th Cir. 1990) (because state law provided a remedy for the alleged unauthorized deprivation of rights, dismissal of procedural due process claim was appropriate).

¶ 33. We conclude that the new caregiver law does not violate Brown's due process rights because the State provided her with adequate post-deprivation remedies. *See Thorp*, 235 Wis. 2d 610, ¶ 53. When the Department initially revoked Brown's license in February 2010, it explained:

> Any person aggrieved by a Department action taken under s. 48.715, Wis. Stats., has the right to an administrative hearing under s. 227.44, Wis. Stats. To appeal this action, you must send a written request for a hearing within ten (10) days after the date you receive this notice. Please include a copy of this notice with the written request for a hearing. The request for a hearing must be sent to [the address provided below].

¶ 34. In other words, the Department not only explained to Brown that she had a right to appeal the revocation of her license, but it also told her which statutes provided that right, the deadline for invoking her right, how to properly initiate her appeal, and where to send the necessary documentation. Brown does not explain why this process provided her was inadequate; indeed, the record shows that she took full advantage of the State-provided post-deprivation remedies. She appealed the revocation to the Division; she appealed the Division's denial of her appeal to the trial court; and she now appeals the trial court's denial of her appeal to this court. We therefore need not discuss whether Brown has a protected liberty or property interest because even if she does, she was provided due process in the form of an adequate post-deprivation remedy. *See McCartney*, 166 Wis. 2d at 967 (individual

471

alleging due process claim must show *both* a protected interest and deprivation of that interest without due process of law); *Thorp*, 235 Wis. 2d 610, ¶ 53; *see also Patrick Fur Farm, Inc. v. United Vaccines, Inc.*, 2005 WI App 190, ¶ 8 n.1, 286 Wis. 2d 774, 703 N.W.2d 707 (we decide cases on narrowest possible ground).

 *b) The new caregiver law does not violate Brown's right to equal protection because it is rationally related to a legitimate government purpose.*

¶ 35. We now turn to Brown's argument that the new caregiver law violates her right to equal protection. "When considering an equal protection challenge to a statute, [we employ] the rational basis test, unless the statute involves a suspect class or a fundamental right." *Kohn v. Darlington Cmty. Sch.*, 2005 WI 99, ¶ 46, 283 Wis. 2d 1, 698 N.W.2d 794. As Brown does not argue that the statute at issue involves a suspect class or a fundamental right, we will apply the rational basis test in this case. *See id.*

¶ 36. "Under the rational basis test, a statute is unconstitutional if the legislature applied an irrational or arbitrary classification when it enacted the provision." *Aicher ex rel. LaBarge v. Wisconsin Patients Comp. Fund*, 2000 WI 98, ¶ 57, 237 Wis. 2d 99, 613 N.W.2d 849. A statute satisfies the rational basis test if it meets five criteria:

> (1) All classification[s] must be based upon substantial distinctions which make one class really different from another.
>
> (2) The classification adopted must be germane to the purpose of the law.

(3) The classification must not be based upon existing circumstances only. [It must not be so constituted as to preclude addition to the numbers included within a class].

(4) To whatever class a law may apply, it must apply equally to each member thereof.

(5) That the characteristics of each class should be so far different from those of other classes as to reasonably suggest at least the propriety, having regard to the public good, of substantially different legislation.

*See id.*, ¶ 58 (brackets in *Aicher*; citation and quotation marks omitted).

■■■■■

¶ 37. "In determining whether a rational basis exists, we look first to determine whether the legislature articulated a rationale for its determination." *Nankin v. Village of Shorewood*, 2001 WI 92, ¶ 12, 245 Wis. 2d 86, 630 N.W.2d 141. If we cannot identify any such articulated rationale, we are obligated to construct one. *See id.* "A statute violates equal protection only when 'the legislature has made an irrational or arbitrary classification, one that has no reasonable purpose or relationship to the facts or a proper state policy.'" *Metropolitan Assoc. v. City of Milwaukee*, 2011 WI 20, ¶ 61, 332 Wis. 2d 85, 796 N.W.2d 717 (citation omitted). However, "[t]he task of drawing lines between different classifications is a legislative one in which perfection 'is neither possible nor necessary.'" *Aicher*, 237 Wis. 2d 99, ¶ 57 (citation omitted). "The fact [that] a statutory classification results in some inequity ... does not provide sufficient grounds for invalidating a legislative enactment." *Nankin*, 245 Wis. 2d 86, ¶ 12 (citation and quotation marks omitted; brackets and ellipses in

473

*Nankin*). "Any doubts must be resolved in favor of the reasonableness of the classification." *Metropolitan Assoc.*, 332 Wis. 2d 85, ¶ 61.

¶ 38. Moreover, a state "has no obligation to produce evidence to sustain the rationality of a statutory classification." *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993). Legislative choices are not subject to courtroom fact-finding and need not be supported by evidence or empirical data; rational speculation is enough. *See id.* " '[T]he burden is on the one attacking the legislative arrangement to [negate] every conceivable basis which might support it.' " *Id.* (citation omitted).

¶ 39. Brown submits that there is no rational basis for the new caregiver law because it is not rationally related to the goal of protecting children, and it is not rationally related to the goal of protecting the Wisconsin Shares program from fraud. Regarding her first argument, Brown claims that there is "no rational basis for believing that those convicted of non-violent financial crimes pose any real threat" to children, and moreover, that the law's allowing the rehabilitation of certain violent offenders while permanently barring financial offenders from holding licenses is nonsensical. Regarding her second argument, Brown argues that under the new law, "a provider with one of the barring convictions is permanently barred from ever again being a childcare provider regardless of whether their childcare has ever received one cent from the State," which she claims "is not germane to the purpose of safeguarding the Shares Program from fraud."[3] Brown

_____

[3] Brown also argues in her reply brief that "there is no rational basis for barring someone convicted of a single, strict

additionally argues that the law is arbitrary because it places violent offenders—such as individuals convicted of first-degree homicide—in the same category as individuals like her. She further argues that it is arbitrary to place individuals convicted of fraud of government funds in a different category than those who have defrauded "a financial institution, an employer, or used the post office to commit fraud." We disagree.

¶ 40. We conclude that Brown's equal protection claim fails because the new childcare law does pass the rational basis test. Regardless of whether the law is rationally related to the goal of protecting children, the law is rationally related to the legitimate purpose of prohibiting individuals who dishonestly benefitted from government welfare in the past from obtaining government funding in the form of childcare subsidies. First, Brown misstates the consequences of having a conviction barring her from licensure under WIS. STAT. § 48.685(5) (2009–10). As the Department and the Division point out, it is not true that she is barred from ever again providing childcare. Instead, Brown remains free to provide childcare for children under terms not subject to WIS. STAT. § 48.65 (2009–10). That is to say, she can continue to provide childcare for less than four children or provide child care for children over the age of seven. Second, we agree with the Department and the Division that the barring of individuals convicted of crimes involving fraudulent use of funds from enumerated government programs is rationally related to a legitimate government interest in preventing further

liability offense from working in childcare. Offenses that lack *mens rea* are not germane to the goals of preventing dishonesty or fraud." As we explained earlier in this opinion, however, Brown was in fact convicted of an offense for which intent was a requirement. Therefore, we must reject her argument.

475

fraud to the Wisconsin Shares program. The State has a legitimate interest in not providing taxpayer funds to those who have previously defrauded the government. For this reason, neither the law nor the classifications imposed by it are arbitrary. Although Brown is undoubtedly correct in highlighting the harshness of the new law, we must keep in mind that legislative perfection " 'is neither possible nor necessary.' " *See Aicher*, 237 Wis. 2d 99, ¶ 57 (citation omitted); *see also Metropolitan Assoc.*, 332 Wis. 2d 85, ¶ 61 ("Any doubts must be resolved in favor of the reasonableness of the classification."). In sum, Brown has "not negate[d] every conceivable basis which might support" the new childcare law, *see Heller*, 509 U.S. at 320, and we must conclude that it does not violate her right to equal protection.

> c) *The Department did not apply the new childcare law to Brown in an unconstitutional manner.*

¶ 41. Brown additionally argues that the way in which the new childcare law was applied to her violated both her right to due process as well as equal protection. She argues that her due process rights were violated because she was "precluded from an entire field of employment" and "labeled with the stigma of a revocation on her record." She also argues that, as applied to her, the Department's decision to revoke her license fails to serve the public interest because Brown proved "for ten years that she can be trusted with the care of children and with childcare funds." We disagree.

¶ 42. The law as applied to Brown does not violate her right to due process. As noted—and as Brown does not refute—Brown has not been excluded from caring for children as a chosen profession. Rather, she has only

been excluded from operating as a licensed childcare provider under WIS. STAT. § 48.65 (2009–10).

¶ 43. Similarly, the law as applied to Brown does not violate her equal protection right. While Brown's particular situation—a single welfare conviction for events occurring more than two decades ago—is unfortunate, she points to no evidence that she was treated differently from any similarly-situated childcare provider whose license was revoked under the new law. Indeed, the facts of *Jamerson* show that the Department treated her almost identically to other individuals whose licenses were revoked under the new law. *See id.*, 2012 WI App 32, ¶¶ 1–8.

*By the Court.*—Order affirmed.