Angelia JAMERSON, Petitioner-Appellant,

v.

DEPARTMENT OF CHILDREN & FAMILIES and
Wisconsin Department of Administration,
Division of Hearings and Appeals,
Defendants-Respondents-Petitioners.

Supreme Court

*No. 2011AP593. Oral argument October 9, 2012.
—Decided January 10, 2013.*

2013 WI 7

(Also reported in 824 N.W.2d 822.)

205

208

For the defendants-respondents-petitioners, the cause was argued by *Mary E. Burke,* assistant attorney general, with whom on the brief was *J.B. Van Hollen,* attorney general.

For the petitioner-appellant, there were briefs filed by *Jill M. Kastner* and *Sheila Sullivan, and Legal Action of Wisconsin, Inc., Milwaukee,* and oral argument by *Jill M. Kastner.*

¶ 1. SHIRLEY S. ABRAHAMSON, C.J. The genesis of this case is the revocation of Angelia Jamerson's child care license by the Department of Children and Families (the Department). The Department based its action on Wis. Stat. § 48.685(5)(br)5. (2009–10).[1] This statute permanently bars those who have ever been

---

[1] All subsequent references to the Wisconsin Statutes are to the 2009–10 version, except references to Wis. Stat. §§ 49.12 and 49.127 are to the 1989–90 version.

convicted of specified predicate crimes from holding a child care license. Section 48.685(5)(br) was created by 2009 Wis. Act 76 with an effective date of February 1, 2010.[2] We refer to § 48.685(5)(br) herein either by the statutory number or descriptively as the new caregiver law.

¶ 2. The new caregiver law imposes a lifetime ban on licensure, a harsh penalty on a license holder who had been convicted of a predicate offense many years before the new caregiver law went into effect. In the present case, Ms. Jamerson had her license revoked on January 20, 2010, and her appeal of the revocation was dismissed without a hearing based on her conviction on a guilty plea of violating Wis. Stat. § 49.12(1) and (6) nearly 20 years before.[3]

---

[2] The license revocation in the present case preceded the effective date of the new caregiver law, which was enacted on November 13, 2009, but did not go into effect until February 1, 2010. Like the parties, the Administrative Law Judge, the circuit court, and the court of appeals, we nevertheless treat the revocation under the new caregiver law.

The legislature later made a technical revision in 2009 Act 185, changing the words "day care" to "child care," the phrase used to describe care and supervision for children for less than 24 hours a day.

[3] The court of appeals found the procedures in the present case troubling, as do we. "Indeed, the fact that [Ms.] Jamerson's convictions formed the *entire* basis of the Department's decision was, in this case, troubling—especially given the harsh penalty demanded by the new caregiver law." *Jamerson v. Dep't of Children & Families,* 2012 WI App 32, ¶ 24, 340 Wis. 2d 215, 813 N.W.2d 221.

Indeed, Ms. Jamerson has not had a license since December 11, 2009, when the license was suspended because of criminal charges filed against an employee.

Ms. Jamerson's contested case hearing on the revocation was scheduled for June 8, 2010, which was 134 days after the

210

¶ 3. This matter is a review of a published decision of the court of appeals reversing orders of the Circuit Court for Milwaukee County, Dennis P. Moroney, Judge.[4]

¶ 4. The circuit court affirmed the Department's decision[5] to dismiss Ms. Jamerson's appeal without a hearing, concluding that Ms. Jamerson's food stamp offense under Wis. Stat. § 49.127(2m) constituted a conviction of "[a]n offense involving fraudulent activity as a participant of the food stamp program."[6] The circuit court concluded that it was unclear whether Ms. Jamerson's violation of § 49.12(1) and (6) constituted fraudulent activity.

---

Department received her appeal. The statute provides for a hearing within 30 days. Wis. Stat. § 48.72. Revoking Ms. Jamerson's license, which inhibits her ability to make a living, is a serious action, and her opportunity to have her case heard quickly and fairly is imperative.

[4] *Jamerson v. Dep't of Children & Families,* 2012 WI App 32, 340 Wis. 2d 215, 813 N.W.2d 221.

[5] We interchangeably refer to reviewing the Department's decision and the Administrative Law Judge's decision of May 27, 2010. The Department adopted the Administrative Law Judge's decision as the Department's final order.

[6] Despite the conclusion of the Administrative Law Judge that the Department's motion to dismiss was not premised upon the conviction under Wis. Stat. § 49.127(2m) but was premised on the conviction under § 49.12(1) and (6), the circuit court concluded otherwise. The circuit court explained that "it is not clear that Jamerson's violation of Wis. Stat. § 49.12(6) involved fraudulent activity, even though it was 'considered a fraud' by statute, because it would be possible for an individual to violate the statue [sic] without knowledge, as it was a strict liability statute." The circuit court concluded, however, that Ms. Jamerson was ineligible for licensure because of her conviction under Wis. Stat. § 49.127(2m).

¶ 5. The court of appeals reversed the orders of the circuit court affirming the Department's decision. The court of appeals concluded that a remand for an administrative hearing was required to determine whether the facts underlying the conviction established it as a conviction barred under the new caregiver law. The court of appeals explained that Wis. Stat. § 49.12(1) and (6) is not an offense specifically enumerated in the new caregiver law as a predicate offense, and nothing in the record demonstrates that Ms. Jamerson's conduct was a fraudulent activity involving a food stamp offense.[7] The court of appeals reasoned that Ms. Jamerson's conviction under § 49.12(1) and (6), without further factual development, does not place her under the new caregiver law's permanent bar.

¶ 6. We affirm the decision of the court of appeals, which remanded the matter to the Division of Hearings and Appeals for a hearing to determine whether Ms. Jamerson's 1991 conviction under Wis. Stat. § 49.12(1) and (6) fulfills the requirements of Wis. Stat. 48.685(5)(br)5.

¶ 7. We address three issues presented to this court. The concurrence addresses issues not briefed or argued.

¶ 8. First, we address the level of deference to be accorded the Department's interpretation and applica-

---

[7] The court of appeals also concluded that a conviction under Wis. Stat. § 49.127(2m) "does not, as a matter of law, show that an offender has partaken in a 'fraudulent activity' regarding food stamps" for purposes of permanent prohibition under Wis. Stat. § 48.685(5)(br)5. *Jamerson,* 340 Wis. 2d 215, ¶ 20. We do not address this offense; it is not before the court. The Department did not rely on it in the motion to dismiss and the Administrative Law Judge did not rely on it. The Department adopted the Administrative Law Judge's decision as the final order of the Department.

tion of the new caregiver law in the present case. More specifically, we address the deference to be accorded the Department's determination that Ms. Jamerson's conviction under Wis. Stat. § 49.12(1) and (6) constitutes, as a matter of law, an offense involving fraudulent activity as a participant in certain public benefit programs for the purposes of the new caregiver law.

¶ 9. We conclude that due weight deference should be accorded the Department's interpretation and application of the new caregiver law in the present case.

¶ 10. Second, we address the procedure the Administrative Law Judge is to use in Ms. Jamerson's appeal of the Department's decision to revoke her license. More specifically, we address whether the Department's interpretation and application of the relevant statutes to deny Ms. Jamerson a contested case hearing is contrary to the clear meaning of the statutes or no more reasonable interpretation of the statutes exists.

¶ 11. We conclude that Wis. Stat. §§ 48.72 and 227.44 govern this issue. Section 48.72 explicitly states that "any person aggrieved by the department's refusal or failure to . . . continue a license . . . has the right to an administrative hearing provided for contested cases in ch. 227. . . ." It further provides that the administrative hearing be held "under s. 227.44 within 30 days after receipt of the request for an administrative hearing . . . ."

¶ 12. Adhering to the text of Wis. Stat. §§ 48.72 and 227.44, we conclude that the clear meaning of the relevant statutes and the more reasonable interpretation of the statutes is that Ms. Jamerson has the right to a hearing provided for a contested case under § 227.44. Like the court of appeals, we do not address the authority of an administrative law judge to grant a motion to dismiss without convening a hearing.

¶ 13. Third, we address whether the Department's interpretation and application of the relevant statutes to permit the Administrative Law Judge, as a matter of law, to grant the Department's motion to dismiss Ms. Jamerson's appeal is contrary to the clear meaning of the relevant statutes or no more reasonable interpretation of the statute exists. To answer this question, we must clarify several factual and procedural matters.

¶ 14. On this review, the only basis for the revocation, that is, the only predicate crime under the new caregiver law justifying revocation, is Ms. Jamerson's conviction in 1991 on her guilty plea for violating Wis. Stat. § 49.12(1) and (6). Any other bases for the Department's revoking Ms. Jamerson's license are no longer at issue.

¶ 15. With regard to the adequacy of the record to prove the only alleged predicate offense for revocation, namely the 1991 conviction for violating Wis. Stat. § 49.12(1) and (6), the Department has changed its position since briefing and oral argument in this court.

¶ 16. In its briefs to the court of appeals and this court, the Department asserted that it may be factually inferred from Ms. Jamerson's food stamp conviction (under § 49.127(2m)) that food stamps were the public benefit upon which the § 49.12(1) and (6) conviction was based.[8]

---

[8] The court of appeals was unwilling to infer that Jamerson's 1991 conviction under Wis. Stat. § 49.12(1) and (6) arose out of the same food stamp activity that was the basis of her conviction under § 49.127(2m). Without that inference, the court of appeals could find no link between a food stamp violation under § 49.127(2m) and the public assistance fraud conviction under § 49.12(1) and (6). The court of appeals noted that the different time periods listed on the judgment of

¶ 17. The Department now "withdraws" this argument and asks this Court to decide the other issues presented but to remand the narrow factual issue of the public benefit involved in Ms. Jamerson's § 49.12(1) and (6) conviction for further administrative proceedings pursuant to Wis. Stat. § 227.57(7).[9]

¶ 18. We conclude, as did the court of appeals (and as the Department now concludes), that on the present record, the Department and the Administrative Law Judge could not have determined, as a matter of law without further factual development, whether Ms. Jamerson's conviction was for a predicate offense under the new caregiver law.

¶ 19. A genuine issue of material fact exists regarding Ms. Jamerson's conviction under Wis. Stat. § 49.12(1) and (6). Therefore, the Department's interpretation and application of the relevant statutes permitting the Department to dismiss Ms. Jamerson's appeal was contrary to the clear meaning of the relevant statutes and a more reasonable interpretation exists. Ms. Jamerson is entitled to a hearing.

¶ 20. In sum, we conclude that due deference should be accorded the Department's interpretation and application of the new caregiver law in the present case; that Wis. Stat. §§ 48.72 and 227.44 accord Ms. Jamerson the right to a hearing, which shall be treated

conviction relating to the two offenses suggested that the same course of behavior may not have been the basis for each conviction.

[9] Wisconsin Stat. 227.57(7) provides as follows: "If the agency's action depends on facts determined without a hearing, the court shall set aside, modify or order agency action if the facts compel a particular action as a matter of law, or it may remand the case to the agency for further examination and action within the agency's responsibility."

as a contested case under § 227.44; and that because genuine issues of material fact exist, the Administrative Law Judge erred as a matter of law in dismissing Ms. Jamerson's appeal without a hearing for factual development.

¶ 21. Accordingly, we remand Ms. Jamerson's appeal to the Division of Hearings and Appeals for a hearing consistent with this opinion.

I

¶ 22. The historical and procedural facts relevant to this review are essentially undisputed. Angelia Jamerson owned and operated a child care facility, Children's Fantasy Child Care and Preschool, in Milwaukee, Wisconsin.

¶ 23. On January 20, 2010, the Department notified Ms. Jamerson that her child care license was revoked. The notice of revocation provided two bases for the Department's action of revocation: (1) criminal charges against an employee for sale of marijuana during working hours; and (2) the new caregiver law prohibiting Ms. Jamerson from holding a license because she had been convicted of two offenses relating to the receipt of public assistance benefits. In 1991, Ms. Jamerson was convicted of two criminal offenses on a plea of guilty: violation of Wis. Stat. § 49.12(1) and (6) and violation of § 49.127(2m).

¶ 24. Although the Department's notice of revocation relied on the marijuana charge against the employee and the two 1991 convictions, the Department's motion to dismiss Ms. Jamerson's request for a hearing relied only on her violation of § 49.12(1) and (6) as a predicate offense under the new caregiver law. The decision of the Administrative Law Judge (which the

216

Department adopted as its final order) also relied only on Ms. Jamerson's violation of § 49.12(1) and (6).

Section 49.12(1) and (6) provide as follows:

> (1) Any person who, with intent to secure public assistance under this chapter, whether for himself or herself or for some other person, wilfully makes any false representations may . . . if the value of such assistance exceeds $2,500, be punished as prescribed under s. 943.20(3)(c).
>
> . . . .
>
> (6) Where a person is originally eligible for assistance and receives any income or assets or both thereafter and fails to notify the officer or agency granting such assistance of the receipt of such assets within 10 days after such receipt and continues to receive aid, such failure to so notify the proper officer or agency of receipt of such assets or income or both shall be considered a fraud and the penalties in sub. (1) shall apply.

¶ 25. Wisconsin Stat. § 49.12(1) and (6) relate to public assistance. These provisions are not, however, listed as predicate offenses under the new caregiver law.

¶ 26. Wisconsin Stat. § 48.685(5)(br), the new caregiver law, identifies certain crimes the conviction of which forever bars the convicted person from a license. The provision applicable to the present case is § 48.685(5)(br)5., which reads in relevant part as follows:

> (5)(br) For purposes of licensing a person to operate a day [child] care center . . . no person who has been convicted . . . of any of the following offenses on or after his or her 12th birthday may be permitted to demonstrate that he or she has been rehabilitated:
>
> . . . .

217

> 5. An offense involving *fraudulent activity as a participant in* the Wisconsin Works program under ss. 49.141 to 49.161, including as a recipient of a child care subsidy under s. 49.155, or as a recipient of aid to families with dependent children under s. 49.19, medical assistance under subch. IV of ch. 49, *food stamps benefits* under the food stamp program under 7 USC 2011 to 2036, supplemental security income payments under s. 49.77, payments for the support of children of supplemental security income recipients under s. 49.775, or health care benefits under the Badger Care health care program under s. 49.665. (Emphasis added.)

■

¶ 27. Food stamps are a form of public assistance, and a violation of § 49.12(1) and (6) may involve a violation of laws relating to food stamps. Ms. Jamerson's conviction therefore may come within the new caregiver law.

¶ 28. Ms. Jamerson timely filed a request for a hearing on January 25, 2010, pursuant to Wis. Stat. § 48.72.

¶ 29. On April 22, 2010, an Administrative Law Judge of the Division of Hearings and Appeals notified the parties of a hearing scheduled for June 8, 2010, to review the Department's decision to revoke Ms. Jamerson's license.

¶ 30. On May 18, 2010, three weeks before the scheduled hearing, the Department filed a motion to dismiss Ms. Jamerson's appeal. The Department relied solely on Ms. Jamerson's conviction under § 49.12(1) and (6), explaining that "[t]he factual circumstances surrounding Ms. Jamerson's arrest and conviction are irrelevant in this matter . . . [because she] was found guilty of a statute that explicitly states such a conviction shall be considered fraud. [The Department] has absolutely no choice but to revoke Ms. Jamerson's license."

¶ 31. In support of its argument that Ms. Jamerson's conviction under Wis. Stat. § 49.12(1) and (6) satisfied the new caregiver law, the Department attached three documents to its motion to dismiss: (1) Ms. Jamerson's Notice of Revocation (labeled Exhibit A), (2) Ms. Jamerson's Crime Information Bureau Report (labeled Exhibit B), and (3) Ms. Jamerson's Background Information Disclosure (labeled Exhibit C). No other documents are in the record. The Department did not attach the complaint against Ms. Jamerson, any plea questionnaire, or the 1991 Judgment of Conviction (except as set forth below).

¶ 32. On May 20, 2010, the Department submitted the 1991 Judgment of Conviction to the Administrative Law Judge (along with a list of other exhibits and witnesses not relevant here) for purposes of the scheduled June hearing.

¶ 33. The Judgment of Conviction, entered on August 12, 1991, explains that Ms. Jamerson was convicted of two offenses: (1) Failure to Report Receipt of Income, in violation of Wis. Stat. § 49.12(6) and (1) and § 943.20(3)(c), which occurred on or between November 3, 1988 and February 28, 1991; and (2) Food Stamp Fraud, in violation of Wis. Stat. § 49.127(2m), (8)(a)(2), and (8)(b)(d), which occurred on or between January 1, 1989 and February 28, 1990.

¶ 34. None of the documents in the record before the Administrative Law Judge or this court states whether Ms. Jamerson's conviction under Wis. Stat. § 49.12(1) and (6) stems from conduct involving food stamps.

¶ 35. Ms. Jamerson filed a document entitled Opposition to Motion to Dismiss arguing that she had a statutory and constitutional right to a hearing regarding the permanent loss of her license, that the underlying

conviction did not require a showing of fraud, and that a factual determination is required on the issue of fraud.[10]

¶ 36. On May 27, 2010, the Administrative Law Judge issued a decision granting the Department's motion to dismiss Ms. Jamerson's appeal. The decision concluded, as a matter of law, that Ms. Jamerson's conviction for a violation of Wis. Stat. § 49.12(1) and (6) constituted " 'fraudulent activity as a participant' and recipient of Food Stamps benefits . . . ." The decision went on to conclude the Ms. Jamerson's conviction is exactly the type of crime for which the legislature under the new caregiver law intended to bar a licensee from holding a child care license. The Administrative Law Judge's decision also concluded that a hearing on Ms. Jamerson's appeal of the license revocation was moot as a matter of fact and law.

¶ 37. On June 23, 2010, the Department adopted the Administrative Law Judge's May 27, 2010, decision as the final order of the Department.

## II

■

¶ 38. The parties dispute the level of deference due to the Department's decision. When this court reviews a decision of an administrative agency, it re-

---

[10] Alternatively, Ms. Jamerson argued that the Department lacked standing to seek to dismiss her appeal without a hearing because none of the conditions in Wis. Adm. Code § DCF 250.11(11)(b) had been met. Ms. Jamerson argued that she did not (1) consent to an extension of the time before the hearing; (2) withdraw her request for a hearing in writing; (3) agree in writing to accept an informal resolution of her appeal; or (4) abandon the hearing request.

views the agency decision, not the decision of the court of appeals or the circuit court.[11]

¶ 39. Interpretation and application of statutes are ordinarily questions of law to be decided by a court, and a court is not bound by an agency's interpretation of a statute.[12] Nevertheless, a court will, under certain circumstances, give deference to an agency's statutory interpretation.[13]

¶ 40. The court has set forth three levels of deference that may be accorded to an agency's interpretation and application of a statute: great weight deference, due weight deference, and no deference (de novo).[14] These three levels of deference take into account the comparative institutional qualifications and capabilities of the court and the administrative agency.[15]

¶ 41. Great weight deference is accorded to agency action when four requirements are met: (1) the agency is charged by the legislature with the duty of administering the statute; (2) the agency's interpretation is one of long standing; (3) the agency employed its expertise or specialized knowledge in forming its interpretation; and

---

[11] *West Bend Co. v. LIRC,* 149 Wis. 2d 110, 117, 438 N.W.2d 823 (1989).

[12] *Racine Harley-Davidson, Inc. v. State Div. of Hearings & Appeals,* 2006 WI 86, ¶ 14, 292 Wis. 2d 549, 717 N.W.2d 184; *West Bend Educ. Ass'n v. WERC,* 121 Wis. 2d 1, 11–12, 357 N.W.2d 534 (1984).

[13] *Racine Harley-Davidson,* 292 Wis. 2d 549, ¶ 11.

[14] *Id.,* ¶¶ 12–20.

[15] *Id.,* ¶¶ 13–14.

(4) the agency's interpretation will provide uniformity and consistency in the application of the statute.[16]

¶ 42. The Department argues for great weight deference, asserting that (1) it has previously administered child care licensing and revocation; (2) it is now charged with administering the new caregiver law; and (3) applying its interpretation of the new caregiver law will provide uniformity and consistency in the law's application.

■

¶ 43. Alternatively, the Department argues that nothing less than due weight deference should be applied to its interpretation. Due weight deference applies when the agency has some experience in an area but has not developed the expertise that places it in a better position than the court to make judgments regarding the interpretation of the statute.[17]

¶ 44. Ms. Jamerson argues that the court of appeals was correct in according the Department's statutory interpretation no deference in the present case and interpreting and applying the statute independently of the agency.[18] Ms. Jamerson argues that no deference, that is, a court's *de novo* interpretation and application of a statute, is appropriate here, because the case is one

[16] *Id.,* ¶ 16.

[17] *Mercycare Ins. Co. v. Wis. Comm'r of Ins.,* 2010 WI 87, ¶ 10, 328 Wis. 2d 110, 786 N.W.2d 785.

[18] After the court of appeals ruled in the instant case, it was faced with a similar case in *Brown v. Dep't of Children and Families,* 2012 WI App 61, 341 Wis. 2d 449, 819 N.W.2d 827. There, the court of appeals gave the Department's conclusions of law due weight deference because the court of appeals concluded that after the agency's interpretation in the present case, its interpretation in *Brown* was no longer one of first

of first impression and the Department lacks experience or expertise in deciding the legal issue presented.[19]

¶ 45. Although the Department has had experience issuing and revoking childcare licenses, it has had no prior experience interpreting the new caregiver law. Thus, we will not accord the Department the great weight deference it requests.[20]

■

¶ 46. The question then becomes whether the Department is to be afforded due weight deference, or no deference. We make this determination even though the court has acknowledged that "in most situations, applying due weight deference will lead to the same result as would applying no deference at all."[21] Due weight deference may be warranted when the agency has specialized experience with the issues regulated by the statute, but has not yet interpreted the specific statutory language at issue.[22]

■

¶ 47. This case presents an issue of first impression, but involves a statute that the Department is

impression and the agency no longer lacked experience in determining the questions presented. *Brown,* 341 Wis. 2d 449, ¶ 23.

[19] *Racine Harley-Davidson,* 292 Wis. 2d 549, ¶ 19. *See also Jamerson,* 340 Wis. 2d 215, ¶ 11 (citing *Kitten v. DWD,* 2001 WI App 218, ¶ 22, 247 Wis. 2d 661, 634 N.W.2d 583).

[20] *Mercycare,* 328 Wis. 2d 110, ¶ 35.

[21] *Mercycare,* 328 Wis. 2d 110, ¶ 37 (quoting *Racine Harley-Davidson,* 292 Wis. 2d 549, ¶ 20: "Under both due weight deference and no deference, the reviewing court may adopt, without regard for the agency's interpretation, what it views as the most reasonable interpretation of the statute."

[22] *Mercycare,* 328 Wis. 2d 110, ¶ 37 (citing *DOR v. Menasha Corp.,* 2008 WI 88, ¶ 51, 311 Wis. 2d 579, 754 N.W.2d 95).

charged with enforcing, and the Department has had experience in issuing and revoking licenses. Thus, we conclude that the Department's interpretation and application of the new caregiver law in the present case should be afforded due weight deference.

■

¶ 48. When a reviewing court applies due weight deference, it sustains an agency's statutory interpretation if it is not contrary to the clear meaning of the statute, unless the reviewing court determines a more reasonable interpretation.[23] Under due weight deference, the reviewing court may adopt, without regard for the agency's interpretation, what the court views as the most reasonable interpretation of the statute.[24]

### III

¶ 49. We now address the procedure the Administrative Law Judge is to use in Ms. Jamerson's appeal of the Department's decision to revoke her license. More specifically, we address whether the Department's interpretation and application of the relevant statutes to deny Ms. Jamerson a contested case hearing is contrary to the clear meaning of the statutes or no more reasonable interpretation of the statutes exists.

¶ 50. The Department's January 20, 2010, Notice of Revocation to Ms. Jamerson explains that its "action is taken pursuant to s. 48.715(4)(b)" and that she may appeal and seek an administrative hearing under Wis. Stat. § 227.44. Ms. Jamerson filed a timely appeal of the Department's decision of revocation.

¶ 51. Because the Department's action was taken pursuant to Wis. Stat. § 48.715, § 48.72 applies. Section

---

[23] *Racine Harley-Davidson,* 292 Wis. 2d 549, ¶ 18.

[24] *Id.,* ¶ 20.

48.72 provides that any person aggrieved by the department's failure to continue a license or any action taken by the department under Wis. Stat. § 48.715 has the right to an administrative hearing provided for a contested case under § 227.44. Wisconsin Stat. § 48.72 provides as follows:

*[A]ny person aggrieved* by the department's refusal or failure to issue, renew, or continue a license or *by any action taken by the department under s. 48.715* has the right to an administrative hearing provided for contested cases in ch. 227. To receive an administrative hearing under ch. 227, the aggrieved person shall send to the department a written request for a hearing under s. 227.44 within 10 days after the date of the department's refusal or failure to issue, renew, or continue a license or the department's action taken under s. 48.715. *The department shall hold an administrative hearing under s. 227.44* within 30 days after receipt of the request for the administrative hearing unless the aggrieved person consents to an extension of that time period. Judicial review of the department's decision may be had by any party in the contested case as provided in ch. 227 (emphasis added).

¶ 52. Ms. Jamerson is a person aggrieved by the Department's actions under Wis. Stat. § 48.715. She appealed the Department's decision timely. Wisconsin Stat. § 48.72 explicitly grants Ms. Jamerson the statutory right to a contested case hearing pursuant to Wis. Stat. § 227.44.

¶ 53. Furthermore, the Department has apparently interpreted Wis. Stat. § 48.72 in the same way. The Department's Notice of Revocation to Ms. Jamerson explicitly instructed her of her "right to an administrative hearing under s. 227.44."

¶ 54. The Department now argues that Ms. Jamerson has only a "qualified right" to a hearing and that she must meet the statutory requirements under Wis. Stat. § 227.42(1) to get a contested case hearing.[25] The court has not accepted this interpretation of § 227.42(1). In *Milwaukee Metropolitan Sewerage District v. DNR,* 126 Wis. 2d 63, 73, 375 N.W.2d 648 (1985), the court declared that Wis. Stat. § 227.42 "creates a residual hearing right. It serves as a safety net, affording a hearing right to those who are not granted a specific right to a hearing by other statutory provisions or administrative rules."[26]

---

[25] Wisconsin Stat. § 227.42(1) provides as follows:

227.42. Right to hearing. (1) In addition to any other right provided by law, any person filing a written request with an agency for hearing shall have the right to a hearing which shall be treated as a contested case if:

(a) A substantial interest of the person is injured in fact or threatened with injury by agency action or inaction;

(b) There is no evidence of legislative intent that the interest is not to be protected;

(c) The injury to the person requesting a hearing is different in kind or degree from injury to the general public caused by the agency action or inaction; and

(d) There is a dispute of material fact.

In contrast with Wis. Stat. § 48.72 and the Department's Notice of Revocation, both of which refer to an administrative hearing under Wis. Stat. § 227.44, Wis. Adm. Code § DCF 251.11(10)(a) and (b) speak of an appeal hearing under Wis. Stat. § 227.42.

[26] This case discussed Wis. Stat. § 227.064(1) (1983–84), which was renumbered § 227.42(1) effective April 22, 1986.

*See also Milwaukee Brewers Baseball Club v. DHSS,* 130 Wis. 2d 79, 93, 387 N.W.2d 254 (1986) (citing *Milwaukee Metro.*

¶ 55. Here, Wis. Stat. § 48.72 grants Ms. Jamerson a specific right to a hearing under § 227.44, and thus, she need not rely on the residual safety net of § 227.42. Wisconsin Stat. §§ 48.72 and 227.44 govern Ms. Jamerson's appeal and grant her the right to a contested case hearing on appeal of the revocation of her license. Even if we accepted the Department's view of § 227.42(1), which we do not, Ms. Jamerson fits within § 227.42(1)(d).

■

¶ 56. Adhering to the text of Wis. Stat. §§ 48.72 and 227.44, we conclude that the clear meaning of the relevant statutes and the more reasonable interpretation of the statutes is that Ms. Jamerson has the right to a hearing provided for a contested case under § 227.44.

¶ 57. Like the court of appeals, we need not and do not address the authority of an administrative law judge to grant the Department's motion to dismiss an appeal without convening a hearing.[27] Resolution of this question is unnecessary in the present case. As we explain below, the Administrative Law Judge erred as a

_Sewerage Dist. v. DNR,_ 126 Wis. 2d 63, 375 N.W.2d 648 (1985), for holding that the precursor of Wis. Stat. § 227.42(1) is clear and unambiguous in creating a residual hearing right as a safety net).

[27] Although not directly on point, an Attorney General Opinion relating to real estate licensing advised that "no contested motion to dismiss should be granted until an actual hearing is convened on notice." The opinion continued, "Where the proceedings involve revocation or denial of a license, for reasons other than failure to pass a written examination, it would be a rare case where circumstances would permit dismissal of the proceedings prior to the conclusion of a meaningful evidentiary hearing on other than jurisdictional grounds or failure of the complaint to state a cause of action." 68 Op. Att'y Gen. 31 (1979) (OAG 12–79).

matter of law in granting the Department's motion to dismiss in the present case, and the matter will therefore be remanded for a contested case hearing.[28]

## IV

¶ 58. We now address the last issue before us: whether the Department's interpretation and application of the relevant statutes to permit the Administrative Law Judge, as a matter of law, to grant the Department's motion to dismiss Ms. Jamerson's appeal without a hearing is contrary to the clear meaning of the relevant statutes or no more reasonable interpretation of the statutes exists. The Department concluded that Ms. Jamerson's appeal could be dismissed without a hearing because the very conviction for a violation of

---

In *Brown v. Dep't of Children and Families*, 2012 WI App 61, 341 Wis. 2d 449, 819 N.W.2d 827, the Administrative Law Judge decided the matter on briefs. Both parties agreed to present their respective cases on briefs in lieu of an administrative hearing. Brief and Appendix of Respondents-Respondents (the Department) to Court of Appeals at 3, *available at* 2011 WL 5006372.

[28] The parties have expressed disagreement about and have not fully briefed and argued the issue of burden of proof in the contested case hearing. We therefore do not decide the issue at this time.

We merely note that the party moving for summary judgment ordinarily has the burden of proof. *Peninsular Carpets Inc. v. Bradley Homes, Inc.*, 58 Wis. 2d 405, 410, 206 N.W.2d 408 (1973) (citing *Kubiak v. Gen. Accident Fire & Life Assurance Corp.*, 15 Wis. 2d 344, 349, 113 N.W.2d 46 (1962)).

We also note that Wis. Admin. Code § HA 1.12(3)(a) (Dec. 2002) comments on the burden of proof as follows:

In proceedings where an agency has issued an order or proposed order and the order recipient requests a hearing on the matter, the agency shall proceed first with the presentation of evidence and shall bear the burden of proof.

Wis. Stat. § 49.12(1) and (6) barred Ms. Jamerson, as a matter of law, from continuing to hold a child care license under Wis. Stat. § 48.685(5)(br)5.

¶ 59. We look to Wis. Stat. § 227.44 for guidance on the procedure in contested case hearings including the use of a motion to dismiss. Wisconsin Stat. § 227.44(1) explains that "[i]n a contested case, all parties shall be afforded an opportunity for hearing after reasonable notice." Wisconsin Stat. § 227.44(3) explains that an "[o]pportunity shall be afforded all parties to present evidence and to rebut or offer countervailing evidence."

¶ 60. Wisconsin Stat. § 227.44(5) authorizes informal disposition of a contested case "by stipulation, agreed settlement, consent order or default" unless precluded by law. This subsection was not satisfied in the present case.

¶ 61. Wisconsin Stat. § 227.43(1)(d) directs the administrator of the Division of Hearings and Appeals to "[p]romulgate rules relating to the exercise of the administrator's and the division's powers and duties under [Section 227]." The Division of Hearings and Appeals has promulgated rules to which we now refer.

¶ 62. Wisconsin Admin. Code § HA 1.01(2) (Dec. 2002) explains that "[t]his chapter shall apply in all contested case proceedings and hearings before the division of hearings and appeals under ch. 227, Stats., except as specifically provided otherwise."

¶ 63. Wisconsin Admin. Code § HA 1.10(2) (Dec. 2002) explains that the summary judgment procedure provided in Wis. Stat. § 802.08 shall be available to parties in a contested case upon the approval of the Division of Hearings and Appeals or the Administrative Law Judge. While permitting summary judgment, neither § HA 1.10(2) nor any other provision in Chapter HA 1 makes any mention of motions to dismiss in a contested case hearing.

¶ 64. Although the Department labeled its motion a motion to dismiss and the Administrative Law Judge characterized the motion as a motion to dismiss, the motion had exhibits attached[29] and such a motion might be treated in a civil case as a motion for summary judgment.[30]

¶ 65. Because the administrative rules do not provide for a motion to dismiss but do provide for summary judgment, we shall treat the motion to dismiss as a motion for summary judgment for purposes of this review to determine whether the Administrative Law Judge could decide the motion as a matter of law, or was required to hold a contested case hearing for further development of the facts.

¶ 66. Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[31]

---

[29] Attached to the Motion to Dismiss were a copy of Ms. Jamerson's Notice of Revocation (labeled Exhibit A), Ms. Jamerson's Crime Information Bureau Report (labeled Exhibit B), and Ms. Jamerson's Background Information Disclosure (labeled Exhibit C).

[30] *Cf.* Wis. Stat. § 802.06(3) and *Bammert v. Don's Super Valu, Inc.*, 2002 WI 85, ¶ 7 n.2, 254 Wis. 2d 347, 646 N.W.2d 365 (treating a motion to dismiss as a motion for summary judgment pursuant to Wis. Stat. §§ 802.06(2)(b) and 802.08).

*See CTI of N.E. Wis., LLC v. Herrell*, 2003 WI App 19, ¶¶ 9–11, 259 Wis. 2d 756, 656 N.W.2d 794 (Ct. App. 2002) (discussing the proper procedure to convert a motion to dismiss to a motion for summary judgment).

[31] Wis. Stat. § 802.08(2); *Maryland Arms Ltd. P'ship v. Connell*, 2010 WI 64, ¶ 20, 326 Wis. 2d 300, 786 N.W.2d 15.

¶ 67. We conclude that in the present case, a more reasonable interpretation of the statutes governing summary judgment and the new caregiver law exists than the one adopted by the Department. There are genuine issues of material fact and the Department, the moving party, is not entitled to judgment as a matter of law on its motion. The documents in this record, without any additional evidentiary support, are insufficient to satisfy the requirements established by the legislature for summary judgment and for the new caregiver law. We therefore do not defer to the Department's interpretation and application of the statutes.

¶ 68. We agree with the court of appeals that any conviction or group of convictions used to satisfy § 48.685(5)(br)5. must satisfy two elements. First, the offense must involve "fraudulent activity." Second, the convicted person must have undertaken that fraudulent activity "as a participant in" a public assistance program specifically enumerated in § 48.685(5)(br)5.

¶ 69. With regard to "fraudulent activity" we note, as did the court of appeals, that Wis. Stat. § 49.12(6) states that an offense involving the failure to notify the proper agency about received assets or income "shall be considered fraud" and that the "violations described in Wis. Stat. § 49.12(1) and (6) have an essential element of fraud . . . ."[32] The Department argues that at all times relevant to the present case, § 49.12(1) and (6) included the elements of fraud.

¶ 70. The Department argues that the State had to prove the following elements for a conviction under § 49.12(1) and that these elements constitute fraud: one

---

[32] *Jamerson,* 340 Wis. 2d 215, ¶ 22.

makes a false representation to a public assistance agency, knowing the representation was false, with the intent to secure public assistance for himself or another and secures the public assistance. The Department argues that the State had to prove the following elements under Wis. Stat. § 49.12(6) that constitute fraud: one who receives public assistance intentionally failed to notify the agency within ten days of the receipt of other income or assets which made him ineligible to receive all or part of the public assistance he had been granted, and he continued to receive the public assistance after he failed to report the new income or assets within the ten-day period.

¶ 71. In contrast, Ms. Jamerson argues that proof of fraud was not always required or clearly accepted as an element of Wis. Stat. § 49.12(1) and (6) in the 1980s and 1990s, and that her conviction was not based on fraudulent activity.

¶ 72. The record in the present case does not contain the complaint or any other document from which it can be clearly determined that Ms. Jamerson engaged in fraudulent activity. When the Department has the authority to impose the harsh penalty of a lifetime bar on licensure for decades-old convictions, the conviction under Wis. Stat. § 49.12(1) and (6) must indeed be based on "fraudulent activity."

¶ 73. On the basis of this record, this is not the case for the court to define "fraudulent activity" in Wis. Stat. § 48.685(5)(br)5. and "fraud" in Wis. Stat. § 49.12(6), and the relationship between these two phrases. Instead, we look to *Brown v. Dep't of Children and Families,* 2012 WI App 61, ¶ 18, 341 Wis. 2d 449, 819 N.W.2d 827, for guidance. In *Brown,* the court of appeals examined the complaint to which Ms. Brown had pled guilty, to determine whether the complaint

shows that she had made false representations in securing food stamps contrary to Wis. Stat. § 49.12(1) and (6).

¶ 74. With regard to the element that the convicted person have engaged in fraud "as a participant in" a public assistance program specifically enumerated in Wis. Stat. § 48.685(5)(br)5., we conclude, as did the court of appeals, that the record does not support an inference that the conviction was based on a violation of a food stamp law or any other public assistance program specifically enumerated in Wis. Stat. § 48.685(5)(br)5.[33]

¶ 75. As we noted previously, the Department's brief argues that an inference can be made that the conviction under Wis. Stat. § 49.12(1) and (6) was based on the illegal food stamp conduct that is the basis for Ms. Jamerson's 1991 conviction under § 49.127(2m). According to the judgment of conviction, the two convictions are not based on conduct during precisely the same period. As we have explained previously, the Department has recently withdrawn this argument and now agrees that there is no evidence in the record supporting the inference that the two convictions stem from the same conduct.

¶ 76. Under the most reasonable interpretation of the new caregiver law, the judgment of conviction and the documents filed in the present case, standing on their own and without any additional factual support, do not satisfy the two factors required in § 48.685(5)(br)5.

██

¶ 77. Genuine issues of material fact exist here. The matter must be remanded to the Division of

---

[33] *Id.,* ¶¶ 18, 22, 23.

Hearings and Appeals to determine whether Ms. Jamerson's conviction under Wis. Stat. § 49.12(1) and (6) involved "fraudulent activity as a participant" in the specific public benefits programs enumerated in Wis. Stat. § 48.685(5)(br)5.

\* \* \* \*

¶ 78. We conclude that due deference should be accorded the Department's interpretation and application of the new caregiver law in the present case; that Wis. Stat. §§ 48.72 and 227.44 accord Ms. Jamerson the right to a hearing, which shall be treated as a contested case under § 227.44; and that because genuine issues of material fact exist, the Administrative Law Judge erred as a matter of law in dismissing Ms. Jamerson's appeal without a hearing for factual development.

¶ 79. We affirm the decision of the court of appeals remanding the matter to the Division of Hearings and Appeals for a hearing to determine whether Ms. Jamerson's 1991 conviction under Wis. Stat. § 49.12(1) and (6) involved "fraudulent activity as a participant" in the specific public benefits programs enumerated in Wis. Stat. § 48.685(5)(br)5.

¶ 80. *By the Court.*—The decision of the court of appeals is affirmed.

¶ 81. PATIENCE DRAKE ROGGENSACK, J. (*concurring*). I do not join the majority opinion. Rather, I write in concurrence because subsequent to oral argument, the State conceded that there is a dispute of material fact in regard to "the narrow factual issue of the [specific] public [] benefits involved in Ms. Jamerson's Wis. Stat. § 49.12(6) and (1) conviction[s]." The State now agrees with Jamerson to seek remand to

234

the Department of Children and Families pursuant to Wis. Stat. § 227.57(7) to conduct fact finding to determine whether Jamerson's food stamp conviction was a public benefit Jamerson received when she failed to report receipt of income in Milwaukee County Case No. 1991CF911244.[1]

¶ 82. On remand, the Department may take judicial notice of the Complaint and the Guilty Plea Questionnaire and Waiver of Rights Form (hereinafter, Guilty Plea Questionnaire) that underlie Jamerson's 1991 convictions, or the State may provide copies of the Complaint and Guilty Plea Questionnaire in 1991CF911244. *See* Wis. Stat. § 902.01(2)(b) (providing that a judicially noticed fact is one that is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"); *Estate of Kriefall v. Sizzler USA Franchise, Inc.,* 2011 WI App 101, ¶ 60, 335 Wis. 2d 151, 801 N.W.2d 781 (concluding that a judge or a court may take judicial notice of certain types of facts whether requested to do so or not).

¶ 83. However, on remand to the Department, the facts alleged in the Complaint or stated by Jamerson in the Guilty Plea Questionnaire cannot be challenged because there has been no appeal of the judgment that was based on these documents. To challenge the facts upon which Jamerson's conviction is based would involve a collateral attack on the judgment of conviction. *See Oneida Cnty. Dep't of Soc. Servs. v. Nicole W.,* 2007 WI 30, ¶ 27, 299 Wis. 2d 637, 728 N.W.2d 652 (explaining that permitting evidence to undermine a judgment is a collateral attack on and an attempt to evade the

---

[1] At the time of her 1991 conviction, Angelia Jamerson appears to have been known as Angelia Leanetta Zollicoffer, according to the judgment of conviction that is part of the record before us.

judgment); *see also Zrimsek v. Am. Auto. Ins. Co.,* 8 Wis. 2d 1, 3, 98 N.W.2d 383 (1959) (explaining that at times a defense actually constitutes a collateral attack on a judgment).

¶ 84. The powers of the Department are governed by statute.[2] *See* Wis. Stat. § 227.46(1) (defining limited powers of hearing examiners); *see also Stern v. WERC,* 2006 WI App 193, ¶ 24, 296 Wis. 2d 306, 722 N.W.2d 594 (explaining that the subject matter jurisdiction of administrative agencies is limited to what has been conferred by statute). There exists no statutory authority for the Department to hear a collateral attack on the 1991 circuit court judgment convicting Jamerson of violating Wis. Stat. § 49.12(6) and (1). Accordingly, the Department does not have jurisdiction to hear a collateral attack on that judgment. *See Wis. Citizens Concerned for Cranes & Doves v. DNR,* 2004 WI 40, ¶ 14, 270 Wis. 2d 318, 677 N.W.2d 612 (reaffirming that an administrative agency has "only those powers which are expressly conferred or which are necessarily implied by the statutes under which it operates" (internal quotation marks omitted)). Therefore, if it is Jamerson's intent to attack the facts that form the basis for the Complaint or the Guilty Plea Questionnaire in 1991CF911244, such a collateral attack cannot proceed as a part of the Department's hearing on remand. *See id.*

¶ 85. In addition, in order to have a contested case hearing in this proceeding, the requirements of Wis. Stat. § 227.42(1) must be fulfilled. Section 227.42(1) requires:

---

[2] *See* Wis. Stat. § 48.72 (establishing appeal procedure for persons aggrieved by Department's refusal to issue, renew, or continue child care licensure, and directing that such appeals are governed by Wis. Stat. § 227.44).

In addition to any other right provided by law, any person filing a written request with an agency for hearing shall have the right to a hearing which shall be treated as a contested case if:

(a) A substantial interest of the person is injured in fact or threatened with injury by agency action or inaction;

(b) There is no evidence of legislative intent that the interest is not to be protected;

(c) The injury to the person requesting a hearing is different in kind or degree from injury to the general public caused by the agency action or inaction; and

(d) There is a dispute of material fact.

¶ 86. Therefore, on remand, when the Complaint and the Guilty Plea Questionnaire in the 1991 case are provided, it is possible that there will be no dispute of material fact, such that the hearing will be in the nature of record supplementation to afford the Department the opportunity to address the narrow factual finding of the specific public benefits involved in Jamerson's Wis. Stat. § 49.12(6) and (1) convictions. Where the facts found are based on undisputed evidence, a question of law is presented. *See State ex rel. Flores v. State,* 183 Wis. 2d 587, 609, 516 N.W.2d 362 (1994) (concluding that the findings of the factfinder based on undisputed evidence present a question of law).

¶ 87. Accordingly, to enable the parties to address the narrow factual issue of the specific public benefits that were involved in Jamerson's Wis. Stat. § 49.12(6) and (1) convictions in Milwaukee County Case No. 1991CF911244, I respectfully write in concurrence with the majority opinion to the extent that the opinion remands the matter to the Department for further proceedings.

¶ 88. I am authorized to state that Justices ANNETTE KINGSLAND ZIEGLER and MICHAEL J. GABLEMAN join this concurrence.