Sonja BLAKE, Petitioner-Appellant,

v.

RACINE COUNTY HUMAN SERVICES DEPARTMENT,
Respondent-Respondent.

Court of Appeals

*No. 2012AP31. Submitted on briefs February 21, 2013.
—Decided March 27, 2013.*

2013 WI App 45

(Also reported in 831 N.W.2d 439.)

499

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Jill M. Kastner* of *Legal Action of Wisconsin*, Milwaukee.

On behalf of the respondent-respondent, the cause was submitted on the brief of *John P. Serketich* of *Racine County Corporation Counsel*, Racine.

Before Brown, C.J., Reilly and Gundrum, JJ.

¶ 1. REILLY, J. Sonja Blake was convicted in 1986 of misdemeanor welfare fraud in violation of WIS. STAT. § 49.12(9) (1985–86), since renumbered as WIS. STAT. § 49.95(9) (2011–12). The elements of Blake's crime required proof that (1) Blake was receiving public assistance from a public agency on the basis of facts originally stated by Blake to that public agency, (2) those facts changed, (3) Blake knew she had a duty to report the change and purposely failed to do so within ten days of the change, and (4) Blake continued to receive public assistance after failing to report the

change. *See* Wıs JI—Criminal 1854 (1980). In 2010, the Racine County Human Services Department revoked Blake's child caregiver certification based on this conviction as the Department found it amounted to "[a]n offense involving fraudulent activity as a participant in the Wisconsin Works program" that permanently barred her certification.

■

¶ 2. Blake appealed her revocation to a Department hearing examiner, who concluded that revocation was appropriate under the new Wıs. Stat. § 48.685(5)(br)5. (2011–12). The circuit court upheld the hearing examiner's decision. We reverse as *Jamerson v. DCF*, 2013 WI 7, ¶ 72, 345 Wis. 2d 205, 824 N.W.2d 822, released subsequent to the decisions of the hearing examiner and the circuit court, requires that the Department have evidence from which it can be clearly determined that Blake's conviction was based on "fraudulent activity" before her caregiver license may be revoked. We are bound to follow our supreme court's rulings regardless of whether we agree with them. *See Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246 (1997).

## BACKGROUND

¶ 3. Blake was charged in 1986 with a felony violation of Wıs. Stat. § 49.12(9) (1985–86) and subsequently pled no contest to a misdemeanor violation of that statute. Blake had two vehicles registered to her that she had not reported as assets, resulting in overpayments in her welfare assistance. According to the criminal complaint charging her with felony welfare fraud, Blake admitted ownership when asked about the

vehicles and told an investigator that she knew she should have reported the motorcycle to the welfare office but thought the car did not have to be reported because it did not run.

¶ 4. Blake was certified as a child caregiver by the Department in 2001. On February 1, 2010, her certification was revoked by the Department pursuant to a new law that established that certain convictions would permanently bar a person from working as a certified child caregiver. The Department informed Blake that her 1986 conviction provided grounds for such a permanent bar. The Department based this decision on a determination that Blake's conviction qualified as "[f]raudulent activity as a participant in Wisconsin Works Program."

¶ 5. Blake appealed the decision, arguing that her 1986 conviction did not involve "fraudulent activity." The Department held a hearing on Blake's appeal. At the hearing, the Department accepted into evidence the judgment of conviction and criminal complaint charging her with felony welfare fraud. Blake objected to the use of the criminal complaint to support the revocation of her certification on the ground that it constituted inadmissible hearsay. She also argued that the information included in the complaint was insufficient as she was convicted of a misdemeanor, while the complaint charged her with a felony, and as the complaint did not show she engaged in fraud. Blake testified at the hearing that she did not believe that she had to report the car, as it was a gift, and that she did not remember owning a motorcycle. The only other testimony presented at Blake's hearing was from a Department employee who stated that she relied on proof of Blake's conviction and the information contained in the crimi-

nal complaint to conclude that Blake was permanently barred from being a certified caregiver.

¶ 6. The hearing examiner upheld the Department's decision to revoke Blake's caregiver certification based on two findings: (1) the descriptive title of the crime for which she was convicted, which included the word "fraud," and (2) Blake's statements in the criminal complaint, which the hearing examiner found showed that Blake "was aware that dollar amounts were going to be attached to those [unreported] items that could affect her in some way, and that she was making those determinations herself rather than allowing the agency to do so. This knowledge of her responsibilities and of the consequences of her actions shows intent."

¶ 7. On certiorari review, the circuit court determined that the criminal complaint from Blake's 1986 conviction was admissible and upheld the hearing examiner's decision on the basis that the statute under which Blake had been convicted defined her offense as fraud. Blake appeals.

## STANDARD OF REVIEW

██

¶ 8. Blake challenges the sufficiency of the evidence relied upon to revoke her certification. In an administrative review proceeding, the appellate court reviews the administrative agency's decision and not that of the circuit court. *Motola v. LIRC*, 219 Wis. 2d 588, 597, 580 N.W.2d 297 (1998). Our examination of the sufficiency of the evidence on certiorari review is identical to the substantial evidence test employed in Wis. Stat. ch. 227 reviews. *Gehin v. Wisconsin Grp. Ins. Bd.*, 2005 WI 16, ¶ 6, 278 Wis. 2d 111, 692 N.W.2d 572.

Thus, the evidence required to survive this test must be enough for a reasonable person to reach a conclusion, i.e., "more than 'a mere scintilla' of evidence and more than 'conjecture and speculation.' " *Id.*, ¶ 48.

■

¶ 9. We review an administrative agency's legal conclusions according to one of three levels of deference. *Kitten v. DWD*, 2001 WI App 218, ¶ 22, 247 Wis. 2d 661, 634 N.W.2d 583. If the administrative agency's experience, technical competence, and specialized knowledge aid it in its interpretation and application of the statute, we give the agency's legal conclusions "great weight." *Id.* An agency decision that is "very nearly" one of first impression will receive "due weight" deference. *Id.* Finally, a de novo standard is applied where the agency lacks experience in the law or the question presented. *Id.*

## DISCUSSION

¶ 10. WISCONSIN STAT. § 48.685(5)(br)5. (2011–12) provides that no person may be licensed to operate or work at a child care center if that person has been convicted of "[a]n offense involving fraudulent activity as a participant in the Wisconsin Works program."

¶ 11. Our supreme court's recent decision in *Jamerson* addressed what is necessary to establish that a person has a conviction applicable under this statutory section. *Jamerson* involved the revocation of a caregiver's certification based on a previous conviction involving violations of WIS. STAT. §§ 49.12(1) and (6) (1989–90).[1] *Jamerson*, 345 Wis. 2d 205, ¶ 14. The court determined that Jamerson's conviction "may come

---

[1] These statutes, which have since been amended and renumbered, provided:

within the new caregiver law." *Id.*, ¶ 27. But, as there was a dispute over whether Jamerson's conviction involved " 'fraudulent activity as a participant' in a specific public benefit program enumerated in WIS. STAT. § 48.685(5)(br) [(2009–10)]," the court determined that she was entitled to a contested hearing. *Jamerson*, 345 Wis. 2d 205, ¶ 77. The court left unresolved precisely what evidence was necessary to "clearly determine[] that [a caregiver with a public assistance conviction] engaged in fraudulent activity." *Id.*, ¶ 72. The court ruled out, however, solely relying on statutory language that states that a crime "shall be considered fraud" or "have an essential element of fraud." *Id.*, ¶¶ 69, 76.

¶ 12. The court in *Jamerson* also determined that the Department of Children and Families was owed "due weight deference" in its legal conclusions related to WIS. STAT. § 48.685(5)(br)5. (2011–12). *Jamerson*, 345 Wis. 2d 205, ¶ 47. As the Racine County Human Services Department, similar to the DCF in *Jamerson*, is an agency charged with administering the new caregiver law,[2] we also apply due weight deference in this case. *See Wis-*

---

(1) Any person who, with intent to secure public assistance under this [public assistance] chapter, whether for himself or herself or for some other person, willfully makes any false representations may ... be punished as prescribed under [WIS. STAT. §] 943.20(3)(c).

. . . .

(6) Where a person is originally eligible for assistance and receives any income or assets or both thereafter and fails to notify the officer or agency granting such assistance of the receipt of such assets within 10 days after such receipt and continues to receive aid, such failure to so notify the proper officer or agency of receipt of such assets or income or both shall be considered a fraud and the penalties in sub. (1) shall apply.

WIS. STAT. §§ 49.12(1) and (6) (1989–90).

[2] *See* WIS. STAT. § 48.685(5)(a) (2011–12).

*consin Indus. Energy Grp., Inc. v. PSC*, 2012 WI 89, ¶ 22, 342 Wis. 2d 576, 819 N.W.2d 240. Under this standard, we will uphold the agency's reasonable statutory interpretation unless we find a more reasonable interpretation exists. *Id.*

¶ 13. Similar to Jamerson, Blake argues that the permanent certification bar established by the new caregiver law does not apply to her as her conviction under WIS. STAT. § 49.12(9) (1985–86) did not require proof of fraud.[3] Blake's argument is unavailing in the wake of *Jamerson*. We see little difference between the crime with which Blake was convicted and the crime at issue in *Jamerson. Compare* § 49.12(6) (1989–90) *with* § 49.12(9) (1985–86). Although Blake's conviction alone does not establish that she engaged in "fraudulent activity" that would permanently bar her caregiver certification, if evidence is presented that Blake did in

---

[3] The statute under which Blake was convicted in 1986 is identical to WIS. STAT. § 49.95(9) (2011–12):

> **(9)** If any person obtains for himself or herself, or for any other person or dependents or both, assistance under this [public assistance] chapter on the basis of facts stated to the authorities charged with the responsibility of furnishing assistance and fails to notify said authorities within 10 days of any change in the facts as originally stated and continues to receive assistance based on the originally stated facts such failure to notify shall be considered a fraud and the penalties in sub. (1) shall apply. The negotiation of a check, share draft or other draft received in payment of such assistance by the recipient or the withdrawal of any funds credited to the recipient's account through the use of any other money transfer technique after any change in such facts which would render the person ineligible for such assistance shall be prima facie evidence of fraud in any such case.

WIS. STAT. § 49.12(9) (1985–86).

fact engage in such fraudulent activity and that it formed the basis of her conviction under § 49.12(9) (1985–86), then that conviction "may come within the new caregiver law." *See Jamerson*, 345 Wis. 2d 205, ¶ 27.

■

¶ 14. Blake next argues that not only did the Department erroneously rely on the descriptive title of her conviction to revoke her certification, but that the Department did not provide sufficient evidence to establish that she had been convicted of a crime involving fraudulent activity. *Jamerson* supports Blake's arguments. *Jamerson* clearly establishes that Blake's conviction alone is insufficient grounds for the revocation of her certification. Therefore, the hearing examiner's and circuit court's reliance on the title of Blake's conviction, as it included the word "fraud," was in error. *See id.*, ¶ 72.

¶ 15. Furthermore, in the wake of *Jamerson*, we agree with Blake that the hearing examiner needed additional evidence to establish Blake was convicted for fraudulent activity to justify the revocation of her certification. According to our reading of *Jamerson*, the supreme court expects a level of evidence that will provide a clear determination that a person convicted under WIS. STAT. § 49.12(9) (1985–86)—or its renumbered equivalent—engaged in "fraudulent activity" to provide grounds for revocation under WIS. STAT. § 48.685(5)(br)5. (2011–12). *See Jamerson*, 345 Wis. 2d 205, ¶ 72. A guilty plea does not necessarily establish an admission of all the facts of the charged crime. *See Mrozek v. Intra Fin. Corp.*, 2005 WI 73, ¶ 21, 281 Wis. 2d 448, 699 N.W.2d 54. Furthermore, while the criminal complaint lays out facts supporting a felony charge against Blake, Blake pled no contest to a misde-

meanor offense. *Cf. Brown v. DCF*, 2012 WI App 61, ¶ 18, 341 Wis. 2d 449, 819 N.W.2d 827. The Department has not explained what happened between when the complaint was filed and when the plea was entered to justify reliance on the complaint to establish that Blake engaged in fraudulent activity. *Jamerson* demands more. We are unsure of what precisely it demands, however, given that the court did not define what constitutes "fraudulent activity" under the new caregiver law as opposed to "fraud" in the public assistance statutes. *See Jamerson*, 345 Wis. 2d 205, ¶ 73.

■

¶ 16. Although our conclusion is dispositive of Blake's appeal, we address Blake's argument regarding the admissibility of the criminal complaint as evidence at her administrative hearing as this issue is likely to arise again on remand. *See State v. Temby*, 108 Wis. 2d 521, 527, 322 N.W.2d 522 (Ct. App. 1982). We find that, given the relaxed evidentiary rules that govern administrative hearings, *see Gehin*, 278 Wis. 2d 111, ¶ 51, the criminal complaint may be admitted and considered by the hearing examiner. We caution, however, that "uncorroborated hearsay alone does not constitute substantial [or sufficient] evidence." *Id.*, ¶ 56. As we already have determined that Blake's criminal complaint was insufficient to establish that she engaged in "fraudulent activity" under the new caregiver law and *Jamerson*, we likewise find that the hearing examiner may not rely solely on the criminal complaint without nonhearsay corroboration as provided for by *Gehin*, 278 Wis. 2d 111, ¶¶ 92, 103–04.[4]

---

[4] We note that *Jamerson* cites approvingly to our decision in *Brown v. DCF*, 2012 WI App 61, 341 Wis. 2d 449, 819 N.W.2d

## CONCLUSION

¶ 17. *Jamerson* instructs that prior to establishing that a conviction satisfies the requirements of WIS. STAT. § 48.685(5)(br)5. (2011–12), evidence must clearly show that the conviction was for "fraudulent activity." The title of the conviction and the uncorroborated criminal complaint presented at Blake's hearing were insufficient to meet this standard. Accordingly, we remand this case to the Department for another hearing in accord with *Jamerson* and *Gehin* or to restore Blake's caregiver certification.

*By the Court.*—Order reversed and cause remanded with directions.

827, in which DCF relied on a criminal complaint to establish that a conviction involved "fraudulent activity." *See Jamerson v. DCF*, 2013 WI 7, ¶ 73, 345 Wis. 2d 205, 824 N.W.2d 822. Nowhere does *Jamerson* suggest that *Gehin v. Wisconsin Group Insurance Board*, 2005 WI 16, 278 Wis. 2d 111, 692 N.W.2d 572, has been overruled, however. Furthermore, there is no indication that Brown objected to the admission of the criminal complaint at her administrative hearing or raised it as an issue on appeal. *See Brown*, 341 Wis. 2d 449, ¶¶ 1, 9.