**COURT OF APPEALS**

**DECISION**

**DATED AND FILED**

**November 5, 2019**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.   2018AP1507-CR**

Cir. Ct. No. 2015CF5197

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**

**DISTRICT I**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JEFFREY D. LEE,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County:  MARK A. SANDERS, Judge.  *Affirmed*.

Before Kessler, Kloppenburg and Dugan, JJ.

¶1     KESSLER, J.  Jeffrey D. Lee appeals a judgment of conviction, following a jury trial, for first-degree sexual assault of a child under the age of twelve.  He also appeals the order denying his postconviction motion for relief. We affirm.

## BACKGROUND

**The Charges**

¶2     On December 4, 2015, Lee was charged with first-degree sexual assault of a child under the age of twelve.  According to the criminal complaint, Lee repeatedly assaulted J.M.L. while she attended her great-aunt's daycare center between February 2008 and February 2009.  J.M.L. told police that Lee was her great-aunt's boyfriend and that she was alone with him on a number of occasions.  The complaint states that "before naptime, [J.M.L.] would be sent upstairs and [Lee] would tell her to go into [her great-aunt's] room, that he would strip all of her clothes off, lay her on the bed and touch her vagina with his fingers."  J.M.L. also told police that Lee licked her vagina.  The complaint states that J.M.L. was six years old when the assaults occurred and that they occurred approximately ten to twenty times.

**Other-Acts Motion**

¶3     Prior to trial, the State sought to admit other-acts evidence alleging that Lee sexually assaulted several other minors while dating their mothers.  As relevant to this appeal, the State sought to admit evidence pertaining to the following:

- A previous conviction in Milwaukee County Circuit Court case No. 2008CF3993 for the repeated sexual assault of a child, "Child 1."  Child 1 alleged that on multiple occasions between April 2007 and August 2008, Lee touched her vagina.  Child 1 was six and seven years old at the time of the assaults.  Lee was dating Child 1's mother at the time of the assaults;

- Allegations by "Child 2," Child 1's older sister, that Lee touched Child 2's vagina with his hands and penis on at least four occasions between February 2007 and August 2008. Child 2 also alleged that Lee sexually assaulted her with a toothbrush on one occasion. Child 2 was seven and eight years old at the time of the assaults. The allegations were also charged in case No. 2008CF3993, but were dismissed and read in;[1]

- Allegations by "Child 3" that in 2007, when Lee was dating her mother, he placed his hands on Child 3's vagina under her clothing. Child 3 alleged that the assault occurred on her mother's bed while her mother was at work. Child 3 was eight years old;

- Allegations by "Child 4" that in March 2006, when she was fourteen years old, Lee put his hand down her pants and touched her vagina. Lee was dating Child 4's mother at the time;

- Allegations by "Child 5," Child 4's younger sister, that in 2006, Lee would enter the bathroom while she was showering, show her his penis, and tell her that she would have to "deal with" it when she was "ready." Child 5 also alleged that Lee touched her outside of her clothing.

---

[1] Lee was initially convicted of repeated sexual assault of both Child 1 and Child 2; however, following a successful postconviction motion, Lee's convictions were reversed. Lee then pled guilty to the charges relating to Child 1. The charges relating to Child 2 were dismissed and read in.

¶4    At a hearing on the other-acts motion, the trial court discussed WIS. STAT. § 904.04(2) (2017-18)[2] (the statute governing the admissibility of other-acts evidence), the other-acts admissibility test outlined by *State v. Sullivan*, 216 Wis. 2d 768, 576 N.W.2d 30 (1998), and the application of the greater latitude rule.  The trial court ultimately granted the State's motion and discussed the evidence as it pertained to each child:

- As to Child 1 and Child 2, the court found similarities between the circumstances of their assaults and that of J.M.L. Specifically, the court noted that the time frames overlapped, Lee was dating the children's mothers, the alleged conduct was similar, and the children were all of similar ages.  The court also noted that as to Child 1, evidence of Lee's previous conviction was admissible pursuant to WIS. STAT. § 904.04(b)(2).

- The court made similar findings as to Child 3, noting similarities in age, circumstances, and conduct.

- As to Child 4, the court found that while she was older than the other victims, the alleged conduct was similar to that of the other victims and Lee was also in a relationship with Child 4's mother at the time of the alleged assault.

---

[2] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

- As to Child 5, Child 4's younger sister, the court found that the alleged conduct differed from that of the other children, but that "[t]here is a presence of overt sexual acts."

¶5    The trial court found that the probative value of the evidence relating to Children 1 through 3 outweighed the risk of unfair prejudice. The court found the evidence as to Children 4 and 5 was "a close case," but found that pursuant to *State v. Marinez*, 2011 WI 12, ¶41, 331 Wis. 2d 568, 797 N.W.2d 399, "close cases should be resolved in favor of admission."

**Other-Acts Evidence Admitted at Trial**

¶6    The matter proceeded to trial, where the State introduced evidence of other-acts incidents pertaining to the five children. We address each child separately.

*Child 1*

¶7    The State introduced: (1) the criminal complaint in case No. 2008CF3993; (2) an amended information; (3) the criminal court record for case No. 2008CF3993, also known as the judgment roll; (4) Child 1's medical records from a sexual assault treatment center; (5) Child 1's medical records from Children's Hospital; and (6) testimony from Sergeant Colleen Sturma, stating that she began her investigation into Lee after learning that Child 1 and Child 2 sought treatment at a sexual assault treatment center. The State read portions of Child 1's medical reports to the jury, specifically that Child 1 complained to her mother "of her lower area bothering her down there. Her mother asked if anyone did anything to her down there. [Child 1] stated 'Remember Jeff, he did.'" The State also read the portion of the medical reports in which Child 1 stated, "'Jeff was touching me

in the behind and in the front. [Child 2] has a bigger thing to tell, you should ask [Child 2]."

¶8    Trial counsel objected to the admission of all of the evidence relating to Child 1. The trial court overruled the objections.

*Child 2*

¶9    The State introduced: (1) the criminal complaint in case No. 2008CF3993; (2) the criminal court record (judgment roll) in case No. 2008CF3993; (3) Child 2's medical records from a sexual assault treatment center; and (4) testimony from Sturma that she began her investigation into Lee after learning that Child 1 and Child 2 sought treatment at a sexual assault treatment center. The State read portions of Child 2's statements from her medical records to the jury. Specifically, the State read the portion of the report in which Child 2 stated, "'I need to get checked out because of my stepfather Jeff…. He would take me in his room and tell my sister and brother not to come in because I was bad.'" The State also read Child 2's statement that "You know, when grown ups do stuff that children aren't supposed to do like humping, that's what he did and I told him to stop."

¶10    Trial counsel objected to the admission of all of the evidence pertaining to Child 2. The trial court overruled the objections.

*Child 3*

¶11    The State did not introduce any physical or testimonial evidence of Child 3's allegations during its case-in-chief. However, on cross-examination, the State asked Lee the following:

> [State]: And you know that [Child 3] said that you touched her vagina in 2007, right?
>
> ….
>
> [Lee]: She didn't say that. I was told she didn't say that.

Trial counsel did not object to this line of questioning.

*Child 4*

¶12     The State did not introduce any physical or testimonial evidence of Child 4's allegations during its case-in-chief, but asked Lee the following on cross-examination:

> [State]: … Are you aware that … [Child 4], when she was about 14, in the mid-2000s accused you of putting your hand down her pants and touching her vagina, correct?
>
> [Lee]: Yes.

Trial counsel did not object to this line of questioning.

*Child 5*

¶13     The State again did not introduce any physical or testimonial evidence of Child 5's allegations during its case-in-chief. The State asked Lee the following on cross-examination:

> [State]: And … [Child 5], who was 10 or 11, in that time[]frame, said you touched her vagina outside her clothing?
>
> [Lee]: Yes.

Trial counsel did not object to this line of questioning.

**Jury Instructions, Sentencing, Postconviction Motion**

¶14     Prior to deliberations, the trial court instructed the jury:

Evidence has been received that Jeffrey Lee has been convicted of repeated sexual assault of a child relating to [Child 1]. Additional evidence was presented regarding the defendant's conduct in having sexual contact with … [Child 1] and/or others. The evidence of the conviction and evidence of the conduct are separate and may be considered for separate purposes.

With respect to the evidence of the conviction, based on this evidence, you may, but are not required to, conclude that the defendant has a certain character. Based on this evidence you may also conclude, but are not required to, that the defendant acted in conformity with that character with respect to the offense charged in this case. You should give this evidence the weight you believe it is entitled to receive.

With respect to the evidence presented regarding the defendant's conduct in having sexual contact with [Child 1], [Child 2] and/or others, if you find that this conduct did occur, you may only consider it on the issues of motive, lack of mistake and intent.

¶15    The trial court then defined the terms "motive," "lack of mistake," and "intent," and then continued:

With respect to the evidence presented regarding the conduct involving [Child 1], [Child 2] or others, you may not consider this evidence to conclude that the defendant has a certain character or a certain character trait and that the defendant acted in conformity with that trait or character with respect to the offenses charged in this case.

You may consider the evidence only for the purposes I have described, giving it the weight you determine it deserves. The evidence of the conviction and/or the evidence of the conduct are not to be used to conclude that the defendant is a bad person and for that reason guilty of the offense charged. Before you may find the defendant guilty of the offense charged in this case, the State must satisfy you beyond a reasonable doubt that the defendant is guilty based on all the evidence.

¶16    During deliberations, the jury requested to see the plea agreement Lee entered in case No. 2008CF3993, as well as the judgment roll. Following discussions with both the State and trial counsel, the trial court allowed the jury to

see the plea agreement with the maximum sentence redacted. The court also allowed the jury to see the judgment roll with minimal redactions. Trial counsel objected generally to the jury receiving the judgment roll, but did not request any specific redactions.

¶17    The jury found Lee guilty as charged. The trial court sentenced Lee to forty years of initial confinement to be followed by twenty years of extended supervision. Lee filed a postconviction motion requesting that the postconviction court vacate his conviction or modify his sentence because: (1) the other-acts evidence was not relevant or properly admitted; (2) the trial court's jury instructions regarding the use of the other-acts evidence were confusing and unduly prejudicial; and (3) the sentence was excessive and unduly harsh.

¶18    The postconviction court denied the motion without a hearing. This appeal follows. Additional facts will be included as relevant to the discussion.

## DISCUSSION

¶19    On appeal, Lee argues that: (1) the other-acts evidence was irrelevant and improperly admitted; (2) the trial court's jury instructions regarding the use of other-acts evidence were confusing to the jury and prejudicial; and (3) his sentence was unduly harsh and excessive. We address each issue in turn.

### I.    Other-Acts Evidence

**Legal Standards**

¶20    The admissibility of other-acts evidence is governed by WIS. STAT. § 904.04(2), which provides:

> [E]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

¶21     In *Sullivan*, the supreme court discussed a three-step framework that courts must follow when deciding whether to admit other-acts evidence in all Wisconsin cases. *See id.*, 216 Wis. 2d at 772. Courts must ask: (1) whether the other-acts evidence is offered for an acceptable purpose under WIS. STAT. § 904.04(2); (2) whether the other-acts evidence is relevant under WIS. STAT. § 904.01; and (3) whether the probative value of the evidence substantially outweighs the danger of unfair prejudice, confusion, or delay under WIS. STAT. § 904.03. *Sullivan*, 216 Wis. 2d at 772.

¶22     In *State v. Davidson*, 2000 WI 91, 236 Wis. 2d 537, 613 N.W.2d 606, the supreme court also recognized that "alongside this general framework, there also exists in Wisconsin law the longstanding principle that in sexual assault cases, particularly cases that involve sexual assault of a child, courts permit a 'greater latitude of proof as to other like occurrences.'" *Id.*, ¶36 (citations omitted). *Davidson* held that "in sexual assault cases, especially those involving assaults against children, the greater latitude rule applies to the entire analysis of whether evidence of a defendant's other crimes was properly admitted at trial." *Id.*, ¶51.

¶23     When reviewing a trial court's decision to admit or exclude other-acts evidence, we consider whether the trial court "exercised its discretion in accordance with accepted legal standards and in accordance with the facts of record." *See id.*, ¶53 (citation and one set of quotation marks omitted). We will

10

affirm if the trial court "reviewed the relevant facts; applied a proper standard of law; and using a rational process, reached a reasonable conclusion." *See id.* "If the trial court failed to articulate its reasoning," we "will review the record independently to determine whether there is any reasonable basis for the trial court's discretionary decision." *See id.*

**Application of *Sullivan***

¶24    Prior to trial, the State moved to admit other-acts evidence pertaining to Children 1 through 5. At the hearing on the motion, the trial court discussed each part of the ***Sullivan*** test as it applied to each of the children; however, the specific evidence the State intended to introduce was not discussed. The court found that evidence of Lee's alleged assaults of Children 1 through 5 was offered for multiple permissible purposes, including motive, plan, and absence of mistake. The court found the other-acts evidence to be relevant in that it "relate[s] to a fact or proposition that is of consequence to determination of the action. Identity, plan, motive, all of those things are of consequence here." The court also found enough similarities between the charged offense and the other-acts evidence. As to the final prong of the ***Sullivan*** test, the court found that the probative value of the other-acts evidence relating to Child 1, Child 2, and Child 3 outweighed the risk of unfair prejudice because of the similarities between the conduct charged and the other-acts evidence. The court found that other-acts evidence pertaining to Child 4 and Child 5 was "a close case," but stated that, consistent with case law, "close cases should be resolved in favor of admission."

*Child 1 and Child 2*

¶25    As to Child 1 and Child 2, Lee specifically challenges the State's introduction, over trial counsel's objection, of documents from case

No. 2008CF3993; specifically, the criminal complaint, the nineteen-page judgment roll, the children's certified medical records, and the reading of the children's statements within the medical records.

¶26 We conclude that under the circumstances of this case, the evidence was not erroneously provided to the jury.

¶27 First, a criminal complaint, replete with hearsay, is generally insufficient to establish that a defendant committed the offenses charged in the complaint. *Cf.*, ***Blake v. Racine Cty. Human Servs. Dep't***, 2013 WI App 45, ¶16, 347 Wis. 2d 499, 831 N.W.2d 439. Although hearsay may form the basis of criminal complaints, it is not always admissible at trial. *See **Gelhaar v. State***, 58 Wis. 2d 547, 559, 207 N.W.2d 88 (1973). Here, however, the jury never saw the actual complaint. A limited portion of the complaint was read to the jury during the State's closing argument, after the State explained that Lee had stipulated to the facts of the complaint. The State read the basic facts as they pertained to Child 1, including her age, date of birth, and the specific allegation she made against Lee. The State's reading of the complaint was tied to its argument that Lee lacked credibility because on cross-examination in this case Lee denied sexually assaulting Child 1. The State did not use any information from the complaint about Child 2. In this context, we conclude that the limited portion of the complaint read to the jury was admissible.

¶28 Second, we conclude that the judgment roll from case No. 2008CF3993, under the circumstances of this case, was properly received by the jury. During deliberations, the jury requested to see the judgment roll. Following much discussion between the trial court and the parties, the trial court allowed the jury to see the judgment roll with a few redactions. Because of the

complicated procedural history of that case, Lee did not plead guilty until several years after he was charged. The court agreed with the State's concern that without the judgment roll, the jury would draw its own conclusions regarding the procedural history of Lee's conviction for Child 1. Defense counsel was given an opportunity to redact parts of the judgment roll, which he opted not to do. The trial court reasoned that the document would help the jury understand that Lee had been convicted of a crime that was reversed and then pled guilty to a lesser crime. While the judgment roll is not evidence of Lee's actual conduct toward Child 1 and Child 2, Lee denied assaulting Child 1 despite pleading guilty to the charges. Generally we would be hesitant to conclude that nineteen pages of scheduling, pretrial, trial, and sentencing details—replete with hearsay—would be admissible. However, in this context, where the court explained its reasoning and where counsel did not request further redactions, we conclude that the trial court properly exercised its discretion in allowing the jury to see the judgment roll.

¶29 Next we discuss the medical records. Certified copies of medical records, containing diagnoses and medical opinions, are generally admissible under exceptions to the hearsay rule. *Noland v. Mutual of Omaha Ins. Co.*, 57 Wis. 2d 633, 641-42, 205 N.W.2d 388 (1973). The trial court, in its discretion, may exclude medical records if an entry requires either an explanation or a detailed statement of the judgmental factors providing the basis for the opinion or diagnosis. *Id.* at 641. Similarly, WIS. STAT. § 904.03 authorizes the trial court in its discretion to exclude relevant evidence if its probative value is substantially outweighed by the danger of confusing the issues or misleading the jury.

¶30 Here, the certified medical records contained an analysis of the children's sexual assault examinations, lab test results, care provider notes, and statements from the children detailing their assaults. At trial, however, the State

only read the portions of the records containing the children's statements. The actual medical records were not seen by the jury. We conclude that the records, which contained the children's statements, were admissible. *See **Noland***, 57 Wis. 2d at 641-42 (stating that certified medical records are generally admissible); ***State v. Ellington***, 2005 WI App 243, ¶13, 288 Wis. 2d 264, 707 N.W.2d 907 (stating that where certified medical records are received into evidence and thus accessible to the jury, pertinent portions may be read to the jury). The State did not offer any medical opinions or relay any diagnoses to the jury. Rather, the State read only statements made by Child 1 and Child 2, which were made in the context of questions asked during a medical examination. Where medical records are properly deemed admissible, we find no reason in the record to reject the children's statements of their experiences to medical care providers. Accordingly, we conclude that the reading of those statements, and the medical records in which they were contained, were admissible.

*Child 3, Child 4, and Child 5*

¶31    The State did not introduce any independent evidence that Lee committed the offenses alleged by Child 3, Child 4, or Child 5. Instead, on cross-examination, the State intentionally relied on textbook hearsay when it asked Lee whether he was "aware" of allegations that the State reported were made by each child about Lee's alleged conduct towards each of them years before. The record does not address why trial counsel did not object to the State's tactic. The State contends that because counsel did not object at trial, Lee has forfeited the right to raise this issue on appeal. While counsel did not object at trial, he did object to the admission of any evidence relating to Children 3 through 5 at the ***Sullivan*** hearing. *See **State v. Kutz***, 2003 WI App 205, ¶27, 267 Wis. 2d 531, 671 N.W.2d 660 ("A definitive pretrial ruling preserves an objection to the admissibility of evidence

14

without the need for an objection at trial, as long as the facts and law presented to the court in the pretrial motion are the same as those that arise at trial.").

¶32   The State did not present a scintilla of evidence that Lee had committed the acts alleged by Children 3 through 5. The State simply asked Lee whether he was "aware" that allegations had been made by the children. This is not admissible evidence. This is textbook hearsay.[3]  Without actual admissible evidence of the acts alleged, the State's questions could only be meant to convince the jury that Lee had a propensity to commit such acts. In the context of all of the other evidence against Lee, this tactic can only be described as prejudicial overkill. This improper tactic is exactly what the rules against hearsay were designed to prohibit.

**Harmless Error Analysis**

¶33   Having determined that the testimony pertaining to Child 3, Child 4, and Child 5 was improperly admitted, we must determine whether the error was harmless. *See* ***State v. Britt***, 203 Wis. 2d 25, 41, 553 N.W.2d 528 (Ct. App. 1996) (Evidentiary errors are "subject to a harmless error analysis," and an error "requires reversal or a new trial only if the improper admission of evidence has affected the substantial rights" of the defendant.). An error is harmless if "it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent" the alleged error. ***State v. Deadwiller***, 2013 WI 75, ¶41,

---

[3] *See* WIS. STAT. §§ 908.04, 908.045 (stating that the hearsay rule is meant to prohibit evidence from being received when value rests upon the credibility of one who is not present in court; certain exceptions permit hearsay under circumstances which guarantee its trustworthiness, or when the value of the type of evidence does not depend on the credibility of an individual not subject to cross-examination).

350 Wis. 2d 138, 834 N.W.2d 362 (citations omitted). Our supreme court has outlined several factors to guide our analysis:

> the frequency of the error; the importance of the erroneously admitted evidence; the presence or absence of evidence corroborating or contradicting the erroneously admitted evidence; whether the erroneously admitted evidence duplicates untainted evidence; the nature of the defense; the nature of the State's case; and the overall strength of the State's case.

*See id.* (citation omitted).

¶34    We conclude that the trial record as a whole establishes that the jury would have found Lee guilty even if the erroneous other-acts/improper hearsay evidence had not been admitted.

¶35    The crux of Lee's defense at trial was that he was not present at the daycare during its operation hours. He denied taking J.M.L. to the bedroom he shared with her great-aunt and assaulting her there. On Lee's behalf, both J.M.L.'s great-aunt and her son testified that they never witnessed Lee with J.M.L. in the upstairs bedroom and that Lee was not present while the daycare was open.

¶36    Lee's defense was contradicted by multiple other witnesses. J.M.L., a teenager at the time of trial, testified in vivid detail about her assaults. She told the jury that when she used to attend the daycare Lee would call her upstairs and would "lick" her "private part." J.M.L. stated that she was six years old at the time. J.M.L. also testified that Lee would call for her to go to the upstairs bedroom, where he would lay her on the bed, take off her underwear, lick her "vaginal area," and "open" her vagina with his hands. J.M.L. explained that the assaults occurred approximately ten to twenty times, sometimes in the presence of Lee's infant daughter. J.M.L. stated that she received special treatment from Lee

in that he would give her treats and sometimes take her places with him, which Lee would not do with the other children. J.M.L. also said that her great-aunt was rarely present at the daycare and never witnessed any of the assaults, but on occasion would see J.M.L. in the bedroom after the assaults had occurred. J.M.L. testified that years after the assaults she confided in a friend who encouraged J.M.L. to speak with her mother. J.M.L. asked her mother whether she remembered their aunt's former boyfriend, Lee, and then told her mother about the assaults.

¶37   A.J.S., J.M.L.'s younger brother, was twelve years old at the time of trial. A.J.S. told the jury that when he and his sister attended the daycare, Lee was "around" "[m]ost of the time." A.J.S. stated that their great-aunt was "barely there," and that the daycare was primarily run by "Erica." A.J.S. said that he was not allowed upstairs, but that Lee "would constantly call [J.M.L.] upstairs." A.J.S. also said that when he questioned Lee about why he was not allowed upstairs, Lee would respond that J.M.L. was "way better than you. She's being really good."

¶38   J.M.L.'s mother, S.M.L., told the jury that she enrolled her children at her aunt's daycare, which was located at her aunt's home. S.M.L. stated that her aunt was rarely present at the daycare, and corroborated that the daycare was primarily run by "Erica," another relative. S.M.L. said that she withdrew the children from the daycare because of the lack of her aunt's presence. S.M.L. stated that Lee lived with her aunt and that S.M.L. would frequently see him at the daycare. S.M.L. testified that in July of 2015, she noticed a change in J.M.L.'s attitude and noticed that J.M.L. was "displaying a lot of anger." S.M.L. stated that J.M.L. told her about a school friend who had been assaulted. S.M.L. said that she tried to support J.M.L. by telling her about "the importance of talking about someone that hurt you." Ultimately, J.M.L. asked S.M.L. if "she could tell

[S.M.L.] something," and said, "'I am angry and I have been for a long time.'" J.M.L. began to cry, asked S.M.L. if she remembered Lee, and then said that Lee "molested her." S.M.L. stated that J.M.L. went on to say, "'Uncle Jeff raped me. He kept doing it over and over[.]'" S.M.L. stated that she called her aunt and then took J.M.L. to the police station the next day, where they reported the incidents.

¶39 The testimony of multiple witnesses directly contradicts Lee's theory of defense. Based on their testimony, a rational jury could find beyond a reasonable doubt that Lee was present at the daycare when J.M.L. was in attendance, that Lee had multiple opportunities to take J.M.L. to the upstairs bedroom, and that Lee committed the offenses charged, just as J.M.L. had testified. Despite the improper admission of some of the other-acts evidence, we conclude that a jury would have found Lee guilty beyond a reasonable doubt even if the evidence had not been admitted.

**Jury Instructions**

¶40 Lee contends that the trial court's jury instructions regarding the use of the other-acts evidence were confusing to the jury and were unduly prejudicial. Because Lee's counsel did not object to the instructions at the jury instructions conference, we conclude that this argument is waived. WISCONSIN STAT. § 805.13(3) requires an objection to a jury instruction at trial. "Failure to object at the conference constitutes a waiver of any error in the proposed instructions." Sec. 805.13(3). When a defendant has waived his or her rights under § 805.13(3), this court does not have the "power to reach" the merits of a challenge to the "unobjected-to instructions." *See State v. Schumacher*, 144 Wis. 2d 388, 409, 424 N.W.2d 672 (1988). Lee has not preserved this issue for appeal.

**Sentencing**

¶41 Finally, Lee contends that his sentence was unduly harsh and excessive. Our review of a sentence determination begins "with the presumption that the trial court acted reasonably, and the defendant must show some unreasonable or unjustifiable basis in the record for the sentence complained of." *See State v. Krueger*, 119 Wis. 2d 327, 336, 351 N.W.2d 738 (Ct. App. 1984). The exercise of discretion requires the court to consider the gravity of the offense, the character of the offender, and the need to protect the public. *State v. Spears*, 227 Wis. 2d 495, 507, 596 N.W.2d 375 (1999). The court must provide a "rational and explainable basis" for the sentence it imposes to allow this court to ensure that discretion in fact was exercised. *State v. Gallion*, 2004 WI 42, ¶¶39, 76, 270 Wis. 2d 535, 678 N.W.2d 197. We also examine whether the sentence is "so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances." *See Ocanas v. State*, 70 Wis. 2d 179, 185, 233 N.W.2d 457 (1975).

¶42 The trial court considered the impact of the offense on J.M.L., describing in detail the emotional trauma she endured. The court discussed Lee's education and work history, but ultimately found his character to be "poor" because he did not regard J.M.L. "as a human being or as a child." The court also discussed Lee's criminal history, noting prior convictions for armed robbery, marijuana possession, and sexual assault. The court chastised Lee for his failure to accept responsibility for his actions and stated that "[t]he needs of the public here are straightforward and simple, and that's simply to be protected from you. The public has a strong need to protect those that are vulnerable, particularly children because children are not in a position where they can defend themselves,

19

not just physically, but psychologically and emotionally." The court sentenced Lee to the maximum forty years of initial confinement and twenty years of extended supervision.

¶43     The trial court clearly considered the relevant sentencing factors and took into strong consideration the impact Lee's conduct had on the victim and her family. Lee's argument that the court improperly based its sentence on the sexual assault allegations of other children outside of this case is belied by the court's comments at sentencing. Given Lee's criminal history and the seriousness of the conviction, the maximum sentence does not "shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances." *See id.*

¶44     We conclude that the sentence is not excessive.

¶45     For the foregoing reasons, we affirm.

        *By the Court*.—Judgment and order affirmed.

        Not recommended for publication in the official reports.